Kathleen **DAVIS** and David Davis, Plaintiffs–Appellants,

v.

**NEPCO EMPLOYEES MUTUAL BENEFIT ASSOCIATION,** Defendant–Appellee.

No. 94–1975.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1994.

Decided April 10, 1995.

Jerome A. Maeder (argued), Vincent A. Maeder (argued), William D. Mansell, Wausau, WI, for plaintiffs-appellants.

Lee J. Geronime, Paul D. Windsor (argued), John C. Lapinski, David W. Runke, Michael, Best & Friedrich, Milwaukee, WI, for defendant-appellee.

Before POSNER, Chief Judge, ENGEL,* and EASTERBROOK, Circuit Judges.

ENGEL, Circuit Judge.

This case presents only one question: which party bears liability for future medical expenses when both a tort victim and her medical insurer, an ERISA plan, settle separately with the tortfeasor without explicitly allocating any portion of the settlements for future medical expenses. Because we find that the ERISA plan failed to protect its own interests regarding future medical expenses when it settled the case, we reverse the district court's grant of summary judgment for the plan.

An explosion injured Kathleen Davis in 1989, disfiguring her and covering her body with severe burns. Nepco Employees Mutual Benefit Association ("Nepco"), a self-funded ERISA plan covering her through her husband's employer, paid Mrs. Davis' medical bills following the explosion. Mrs. Davis and her husband, David Davis, brought a Wisconsin state tort suit in which Nepco intervened. In October, 1990, the Davises and Nepco each separately settled with the alleged tortfeasors, who paid Mrs. Davis $3,932,000, Mr. Davis $300,000, and Nepco 90% of the approximately $429,000 in medical bills paid to that time. The Davises and Nepco each executed a full release of the

* Honorable Albert J. Engel, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

alleged tortfeasors, including a release of liability for future medical expenses. Neither the Davises nor Nepco released the other from liability for future medical expenses. The Davises' payments were not apportioned in any way. After the settlement, Mrs. Davis incurred $29,000 in further unexpected medical expenses arising out of the accident. Nepco refused to pay the bill, claiming that the Davises' settlement covered future medical expenses. The Davises paid, then brought this ERISA suit for enforcement of Nepco's obligation. Both parties moved for summary judgment, and the district court ruled in favor of Nepco. Mr. and Mrs. Davis appealed.

The instant case could have been avoided had the parties to the original tort suit clearly allocated their settlements. Without question, both released the original tortfeasors from any future liability for medical expenses. The documents evidencing each settlement are silent as to which portion of a given settlement, if any, was intended to compensate the tort claimants for Mrs. Davis' future medical expenses related to her injuries in the explosion, even though each agreement exonerated the tortfeasor of any further liability for prospective expenses.

█ There is little law controlling the application of Nepco's plan in the Davises' situation. Wisconsin law prevents any insurer from claiming a right of subrogation against settlement proceeds in personal injury cases unless the injured insured has been "made whole," see *Garrity v. Rural Mut. Ins. Co.*, 253 N.W.2d 512, 77 Wis.2d 537 (1977), and Wisconsin courts have on occasion entertained post-settlement trials to find the insured's damages in order to determine whether the insured had been made whole in the settlement. *See Rimes v. State Farm Mut. Auto. Ins. Co.*, 316 N.W.2d 348, 355–56, 106 Wis.2d 263 (1982). However, Nepco is not an ordinary health insurer but an ERISA plan, and the Supreme Court has held that the federal scheme in ERISA preempts state regulation of subrogation rights belonging to self-funded ERISA plans. *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *see* 29 U.S.C. §§ 1144(a), 1144(b)(2)(A), 1144(b)(2)(B). Since ERISA

itself does not address such situations, we must decide this case with reference to Nepco's plan alone. Nepco has not argued that it has discretion to interpret its plan, so we review the terms of the plan de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). In addition to the Nepco plan, we must examine two releases of the original tortfeasor, one by the Davises and one by Nepco, to determine whether they affected the contractual relationship between the Davises and Nepco.

The ERISA plan obligates Nepco to pay employees' medical bills, but it also creates a right to indemnification: "If the employee is reimbursed for medical expenses incurred as the result of an injury by either the person causing such injury or that person's insurance, such payments that duplicate benefits paid by [Nepco] will be refunded to [Nepco] by the employee." Nepco Articles of Association 17. This provision effectively assigns to Nepco the Davises' interest in damages for medical expenses arising out of the injury, whether for past or future charges. No policy limit has been argued, nor any other indemnification or provision which might excuse Nepco from liability for Mrs. Davis' medical costs henceforth.

█ Nepco argues that the release signed by the Davises represents evidence that future medical expenses were covered in the Davises' settlement. Although the Davises' release unequivocally relieves the tortfeasor from liability for any further medical expenses, whenever they might occur, the release signed by Nepco states the same, also waiving any right of recovery against the tortfeasor for future medical expenses. Nepco did in its release reserve its right of indemnification against the Davises, and it claims now that this reservation demonstrates that the Davises' settlement, not Nepco's, included payment for future medical expenses. We fail to see, and Nepco has failed to explain, how a provision in Nepco's contract releasing the tortfeasor can bind the Davises, who were not a party to it. While that reservation might be evidence of what *Nepco* thought at the time, it does not bolster Nepco's argument that the Davises' release

offers evidence of what the Davises or the tortfeasor intended. The fact that the Davises relinquished any claim for future medical expenses against the tortfeasor simply does not prove that they were compensated for future medical expenses; it is equally possible that in return for full compensation of Mrs. Davis' pain and suffering, loss of income, disfigurement, and other damages, the Davises gave up their claim against the tortfeasor for compensation of future medical costs. As the Wisconsin Supreme Court recognized,

> particularly in a personal-injury case, where both the questions of liability and of damages prior to trial are to some degree in doubt[, a] pre-trial release in settlement is in fact usually appropriate when such doubts exist. A release is merely the giving up of a right or claim, and it may or may not be for full consideration and may or may not make the grantor of the release whole. Thus, it is apparent that the legal import urged by [the defendant] to be given to the settlement in this case is inappropriate.

*Rimes,* 316 N.W.2d at 354. We find that neither release indicates which party received, as part of its settlement payment, compensation for future medical expenses. Certainly they do not state what portion of any settlement can be attributed to future medical expenses.

We do, however, consider it significant that the two parties settled independently. The Nepco plan does not subrogate the Davises' interest in the entire tort suit to Nepco, as it could have. *See FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Nor does the plan's indemnification provision make any claim of priority against any damages recovered.[1] Instead, the plan provides that if the Davises recover damages which duplicate payments made by Nepco rather than by the Davises, then they must turn over that portion to Nepco. Lacking any contractual right to intervene, Nepco

could have stayed aloof from the Davises' tort suit, then recovered from them any damages awarded to the Davises for medical expenses, without ever dealing directly with the tortfeasor. If the Davises' settlement had purported to allocate the payment without Nepco's consent, Nepco's right to recover only the amount allocated to medical expenses would present a more difficult case not present in this suit.

No doubt anticipating such difficulties, Nepco acted to protect its own interest rather than wait to collect from the Davises. After all, the Davises had no real incentive to bargain for a settlement including the full value of Mrs. Davis' medical expenses; any such damages recovered would be handed over to Nepco. So Nepco bargained with the tortfeasor directly. While the Nepco plan does not grant Nepco any enforceable right so to negotiate, we believe it does not prohibit it in the absence of objections by the beneficiaries. The Davises did not object. Similarly, the plan does not grant Nepco any right to demand (or negotiate directly for) prepayment of future medical expenses, but neither does it seem to prohibit prepayment by a willing beneficiary or, with her agreement, by a tortfeasor. A beneficiary likely to exhaust the fund for future medical expenses, like Mrs. Davis, has no reason to demand that Nepco pay each future bill as it comes due and then receive reimbursement to the limit of the fund, rather than simply collecting the damages intended to cover future medical costs. Thus we find that Nepco could negotiate directly with the tortfeasor to settle its claim regarding Mrs. Davis' past and future medical expenses.

■ Nepco had neither a duty nor an enforceable right to intervene in the personal injury suit and settlement, but having acknowledged the divergence of its and the Davises' interests by intervening, we believe that Nepco imposed upon itself the duty to protect its own interests adequately. It had

1. Although one post-accident document purports to "deem" all damages recovered by the Davises to be compensation for medical expenses to the extent payments are made by Nepco, Nepco has not argued before this court that this document has any effect. Nepco may question its validity, since it looks like a discriminatory attempt to alter Nepco's rights with respect to one beneficiary without amending the plan itself in accordance with ERISA. *See* 29 U.S.C. §§ 1140, 1141.

the leverage to do so; the tortfeasor acknowledged Nepco's claims against it by settling with Nepco despite the Davises' release of the tortfeasor. Being liable for Mrs. Davis' future medical expenses, Nepco had every interest in determining those costs' probable then-present value and recovering it. Since the tortfeasor was presumably indifferent to the allocation of the sum it was willing to pay, Nepco could and should have bargained either to receive compensation then for future expenses, or to insist as a condition to its own settlement that the tortfeasor clarify in its settlement agreement with the Davises (of which Nepco had notice) that they had received a sum certain as such compensation. It did not do so. Despite effectively owning the Davises' claim against the tortfeasor for all medical expenses, Nepco claims now that it actually received compensation only for the claim for *past* expenses against the tortfeasor before it unambiguously released the tortfeasor from all liability for *future* medical expenses.

■ It is possible, of course, that Nepco was aware of the ambiguity regarding future medical expenses, but felt unable to clarify the situation without risking the settlement it had won for its past expenses. Nepco may have decided to take the settlement offered and deal with the gap later. By failing to deal explicitly with the question of future medical expenses, however, Nepco provoked the lawsuit it had intended to avoid. Despite some sympathy for Nepco, we consider this ambiguity fatal to Nepco's claim. We find the following undisputed facts decisive: Nepco is required by contract to pay Mrs. Davis' medical expenses; Nepco has the right to any payments made by a culpable third party to cover medical expenses; and Nepco exercised this right in settling with the tortfeasor, receiving a lump-sum payment in return for a release of all liability for past and future medical expenses. Nepco cannot identify any payments intended to compensate the Davises for future medical expenses. Since Nepco essentially owned the victim's right to recover for future medical expenses, it is most logical to assume in the absence of a contrary provision in the Nepco-tortfeasor contract that Nepco has already recovered for this element of injury. We decline now to find—solely on the basis of the amounts each settling plaintiff received—that the Davises, rather than Nepco, were compensated in an unknown amount for future medical expenses. Rather, we hold Nepco to its bargain. If it undervalued its claim against the tortfeasor, its mistake does not excuse it from liability for the Davises' medical needs. Therefore we REVERSE the judgment of the district court and REMAND with directions that the court enter summary judgment for Kathleen and David Davis.