Thomas and Judith **WALLER**, Plaintiffs,

v.

**HORMEL FOODS CORPORATION**
and Hormel Foods Corporation
Medical Plan, Defendants.

No. 3–95CV–116.

United States District Court,
D. Minnesota,
Third Division.

March 26, 1996.

Thomas James Conlin, Robins Kaplan Miller & Ciresi, Mpls., MN, for Thomas Waller and Judith Waller.

Larry Ardell Hanson, Moore Costello & Hart, St. Paul, MN, Leonard Walter Glewwe, Moore Costello & Hart, Mpls., MN, for Hormel Foods Corp.

## ORDER

DAVIS, District Judge.

### INTRODUCTION

This matter came before the court on June 28, 1995, and is brought pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, *et seq.*[1] Plaintiffs and Defendants bring cross-motions for summary judgment respecting a subrogation provision of an ERISA plan. For the reasons hereafter stated, Plaintiffs' motion is *Denied* and the motion of Defendants is *Granted.*

---

**1.** Plaintiffs also seek relief under the Minnesota Declaratory Judgments Act. Minn.Stat. § 555.01, *et seq.*

## FACTS

This case presents the question of whether a subrogation clause of an ERISA plan will be given effect where plan beneficiaries allege that prospective settlement with the tortfeasor will not fully compensate them for injuries covered by the plan. The facts, as set forth below, are largely undisputed.

Plaintiff Tom Waller is employed by Defendant Hormel Foods, which provides Tom and his wife Judy with medical coverage. Technically, of course, it was not "insurance" because Hormel relied upon a self-funded employee welfare benefit plan ("The Plan") established pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

In May 1993, the Wallers were involved in a serious car accident caused by the negligence of another motorist. The Wallers were both injured, but Judy sustained a severe hip fracture which has necessitated, as of June 1995, over $140,000 in medical expenses. Tom's physical injuries appear to have been less severe, for he has incurred approximately $6,000 in medical costs. Plaintiffs allege, and Defendants do not dispute, that Judy's injuries in particular have profoundly altered the Wallers' relationship, requiring Tom to spend much of his time caring for his wife. Judy's future earning capacity is uncertain.

These Wallers' medical costs have been borne by the Plan, consistent with its obligation to provide medical coverage. The Wallers also have auto insurance coverage available to compensate them, which precipitates the present dispute. Both the Wallers and the negligent motorist[2] were insured by American Family Insurance Group. The motorist's liability policy, and the Wallers' underinsurance policy each provide $100,000 of coverage per person. As a result, the Wallers each have a total of $200,000 of auto insurance coverage to compensate them.

Judy Waller and American Family have reached a settlement-in-principle, whereby she will receive the full $200,000 available to her in exchange for a release. This agreement, however, is expressly contingent upon Hormel signing the release, since the Plan has asserted a subrogation interest in the settlement proceeds. This interest arises from the following provision contained in the Summary Plan Description which was given to Hormel employees:

> In the event of any payment by the Company for health care expenses, the Company shall be subrogated to all rights of recovery which you or your dependent, receiving such payment, may have against any person or organization. You or your dependent must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. In addition, you or your dependent must do nothing after the loss to prejudice such rights.

Exh. G, attached to the Affidavit of Alfred A. Griffin.

Plaintiffs bring this action seeking a declaration that: (1) the Plan may not enforce the subrogation agreement unless and until the Wallers have been fully compensated for their injuries (i.e., that the Wallers, rather than the Plan have a first priority interest in the settlement proceeds); (2) should the Wallers succeed, they are entitled to attorney's fees incurred in this action; and (3) should the Plan be entitled to assert its interest, it is required to reimburse the Wallers for attorney's fees incurred in securing the insurance settlement. The Plan replies that the clear language of subrogation clause entitles it to the proceeds without regard for the adequacy of Wallers total recovery. It seeks a declaration to this effect. The Plan also disputes the basis for any fee award.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc.*

---

2. The motorist, an elderly woman, has since died, leaving no assets from which a judgment might be satisfied. Her estate is not a party to this lawsuit.

v. *O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992).

## II. Subrogation

■ Subrogation clauses are a common feature of ERISA plans. While they vary widely in precise operation and effect, they share the goal of limiting the total expenditure of plan assets. Subrogation accomplishes this by permitting the plan to "stand in the shoes" of the beneficiary with respect to tort or other recoveries to which the beneficiary is entitled on account of the injuries for which the plan has paid benefits. This prevents the beneficiary from recovering twice—once from the plan, and once from the tortfeasor. With subrogation, the "collateral source rule" is of consequence only for the tortfeasor. Subrogation is frequently confused with reimbursement, owing perhaps to the frequency with which both provisions are included in ERISA plans. The key distinction is that subrogation in effect assigns (or requires assignment of) the tort claim to the subrogee (the plan). Reimbursement simply requires the successful owner of the tort claim (the beneficiary) to repay the plan's advances. Despite this, it is common for plaintiffs to assert claims against tortfeasors which are ostensibly subrogated elsewhere, and fight over allocation afterwards.

A number of state jurisdictions have adopted a rule of interpretation which limits the effect of subrogation clauses in contracts of insurance, regulation of which has been largely devolved to the states by operation of the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.* In these states, subrogation or reimbursement is permitted only where the insured has been "made whole", that is, has received a recovery sufficient to fully compensate him. *See, e.g., Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983) (rejecting claim that subrogation clause itself created first priority interest); *Rimes v. State Farm Mut. Ins. Co.*, 106 Wis.2d 263, 316 N.W.2d 348, 353–354 (1982) (full recovery required before subrogation given effect); *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992) (same). The authorities are not in agreement as to whether this is indeed the majority rule.

"The rule hardly exists, as a practical matter" in the many states permitting anti-subrogation rules to be overridden by boilerplate subrogation clauses. *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1297 (7th Cir. 1993). Whatever its reach, this interpretive rule surely is guided by the compassion and sympathy evoked where, as here, a grievously injured or disfigured claimant seeks redress. Nevertheless, it is deeply flawed.

Employing the make-whole rule to subvert subrogation clauses may in many instances eliminate the incentive of an insured to aggressively pursue a "full" tort recovery. A tort victim/insured who recovers in full must deduct the amounts paid in benefits, whereas the one who recovers just under this amount keeps both the tort settlement and the benefits paid. This appears to be so even if together, these sums "fully" compensate the claimant. *See Provident Life and Acc. Ins. Co. v. Williams*, 858 F.Supp. 907, 913 (W.D.Ark.1994) (ordering that trial be held on issue of whether the *settlement* fully compensated beneficiary). One solution to this problem is the pro-rata division of tort proceeds. The claimant reimburses the insurer in an amount reflecting the ratio between "full" recovery and the actual tort recovery. *See Scales v. Skagit County Medical Bureau*, 6 Wash.App. 68, 491 P.2d 1338 (1971). Thus, if the claimant recovers half the value of his injuries, the insurer recovers one-half of the medical benefits it has paid.

There is a certain rough fairness to this, which contracting parties are obviously free to pursue. However, it merely exposes another flaw in the make-whole rule—the determination of damages. An obvious predicate for invoking the rule is a finding that the claimant has not been made whole. Given the all-or-nothing nature of the rule, this is likely to remain a contested issue between the parties, even where the claimant achieves a substantial recovery. *See, Williams*, 858 F.Supp. at 909 ($6,500,000 tort recovery, $650,000 in benefit payments). The further litigation which will necessarily ensue effectively frustrates the primary goal of settlement, namely, avoiding litigation. At least two federal courts have sanctioned subsequent proceedings solely to determine the

value of an already settled claim. *Williams; Sanders v. Scheideler,* 816 F.Supp. 1338 (W.D.Wis.1993).[3] These proceedings are, of course, full trials on damages.

### III. ERISA Subrogation and Federal Common Law

It is no longer disputed whether state anti-subrogation rules are preempted by 29 U.S.C. § 1144, to the extent they may be applied to ERISA plans. The Supreme Court decisively settled the issue in *FMC v. Holliday,* 498 U.S. 52, 64–65, 111 S.Ct. 403, 410–411, 112 L.Ed.2d 356 (1990), where it invalidated a provision of Pennsylvania's Motor Vehicle Financial Responsibility Law which prohibited the exercise of subrogation rights. However, the foregoing discussion of anti-subrogation rules is helpful in light of the Supreme Court's teaching that Congress expected federal courts develop a body of common law applicable to ERISA actions. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–1558, 95 L.Ed.2d 39 (1987). *See also Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989). While ERISA is silent as to the enforceability of subrogation clauses, that silence has been interpreted as an indication that Congress intended to permit subrogation. *Serembus v. Mathwig,* 817 F.Supp. 1414, 1423 (E.D.Wis. 1992). It is against this backdrop that the Court fashions federal common law in response to the issues here raised.

### IV. Interpretation of ERISA Plans

Plaintiffs seize this invitation, and urge the Court to avoid the "unjust" effect of the subrogation clause by engrafting a federal make-whole limitation upon it. Plaintiffs argue that the clause is ambiguous, because it does not expressly state the order in which tort proceeds, such as the $200,000 settlement-in-principle at issue here, are to be allocated.

### A. Standard of Decision

The Court notes that it need not defer to the Plan's own interpretation of the subrogation clause. Although the record before the Court includes only the Summary Plan Description, rather than the Plan itself, the Plan has nowhere argued that it is vested with discretion to interpret the agreement between it and the Plaintiffs. Were that the case, this Court could only review the Plan's decision upon an "abuse of discretion" standard. *Cox v. Mid–America Dairymen,* 965 F.2d 569, 571 (8th Cir.1992). In view of the record, however, the Court is required to interpret the effect of the subrogation clause *de novo. Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–957, 103 L.Ed.2d 80 (1989); *Brewer v. Lincoln Nat. Life Ins. Co.,* 921 F.2d 150, 153–154 (8th Cir.1990).

Plaintiffs argue that the "ambiguity" regarding allocation subjects the Plan to the doctrine of *contra proferentem,* "[o]ne of the first rules of contract construction[.]" Pls.' Mem.Opp.Summ.J. at 5. From this, they conclude that they must win the battle of contract construction. *Id.* Plaintiffs' argument is strikingly similar to that advanced in *DeGeare v. Alpha Portland Industries, Inc.,* 837 F.2d 812, 816 (8th Cir.1988), vacated and remanded on other grounds, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1988). There, the Eighth Circuit described the proper use of this interpretive rule in the ERISA context:

> Construing ambiguities against the drafter should be the last step of interpretation, not the first step. Using plaintiff's analysis, the instant we determine that the plan documents are ambiguous, they win. We disagree. Ambiguities should be construed against the drafter only if after application of ordinary rules of construction and consideration of extrinsic evidence, the ambiguities remain. If we can ascertain the meaning of the language using ordinary principles of interpretation,

---

**3.** In *Barnes v. Independent Auto Dealers of California,* 64 F.3d 1389, 1395 (9th Cir.1995), the Ninth Circuit reversed summary judgment in favor of an ERISA plan, ruling that an affidavit submitted by a plaintiff's *attorney* containing his valuation of the plaintiff's claim, established the amount of her damages. The potential for abuse inherent in this procedure is obvious, and were this court to adopt a make-whole rule of interpretation, it would decline to follow it.

there is no need to construe it in any other manner.

## B. The Plan's Subrogation Clause

Plaintiffs do not identify precisely how the subrogation clause is ambiguous. Nor do they explain how the application of ordinary rules of construction, which is the predicate inquiry under *DeGeare*, sustains their interpretation. Plaintiffs suggest that the "average plan participant" could not read the subrogation set forth above as creating a first priority right in the Plan. Plaintiffs rely on *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150 (8th Cir.1990). *Brewer* involved an ERISA plan which provided coverage for, inter alia, "mental illness". One of the plan participants had a covered dependent who was hospitalized and successfully treated for an affective mood disorder. The plan denied plaintiff's submitted claims for the cost of treatment. The denial was based on scientific evidence which indicated that this type of disorder was the result of biological or genetic causes. Accordingly, it technically fell outside the scientific definition of "mental illness", and it was on this basis that the district court granted summary judgment to the Plan.

The Eighth Circuit reversed. Although it did not quarrel with the science underlying this conclusion, the Court of Appeals pointed out that ERISA required that plans be "written in a manner calculated to be understood by the average plan participant". 29 U.S.C. § 1022(a)(1). A layperson, the appeals court reasoned, does not make the fine analytic distinctions between "organic" mental disorders and "Freudian" "mental illness". Thus, the average participant could not be expected to recognize that a plan which covered one, without definition, did not encompass also the other. While favoring "neither party's construction", the Eighth Circuit upheld the plaintiffs' reasonable expectation. 921 F.2d at 154.

This case does not present such an opportunity, to the extent that Plaintiffs argue that their "reasonable" expectation entitles the Plan to nothing. The term "subrogation" is not defined in the Plan. It is a term chiefly of concern to insurance lawyers,

which meaning readily appears from a legal dictionary. "Subrogation. The substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is subrogated succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." Black's Law Dictionary (1979 ed.). One may presume that this term does not have great currency among laypersons, but this neither defeats reasonable expectations nor creates ambiguity. Unlike the *Brewer* plan's coverage for "mental illness", the subrogation clause at issue here does not possess a lay, or common meaning which is at odds with the technical meaning. Its ordinary meaning *is* its technical meaning. Subrogation means that the Plan stands in the shoes of the Wallers with respect to their rights of tort recovery. The clause *ipso facto* creates priority in the Plan, because it is to the Plan that the Wallers claims are assigned.

## C. Federal Common Law

Despite this, Plaintiffs urge this Court to adopt as federal common law the principle that ERISA subrogation clauses may not be enforced unless the beneficiary is made whole via the collateral proceeds received. Several federal courts have considered the limiting rule which Plaintiffs seek. These courts have, across a wide spectrum of ERISA subrogation provisions and factual circumstances, reached different conclusions. Not one, however, has endorsed Plaintiffs' theory under the circumstances of this case.

In advancing the make-whole rule, Plaintiffs set great store beside *Sanders v. Scheideler*, 816 F.Supp. 1338 (W.D.Wis.1993). At issue in *Sanders* was an ERISA plan which contained the following provision:

> If the employee is reimbursed for *medical expenses* incurred as the result of an injury by either the person causing such injury or that persons' [sic] insurance, *such payments that duplicate benefits* paid by [the plan] will be refunded to [the plan] by the employee.

Sanders, 816 F.Supp. at 1344 (emphasis in opinion).[4]

The beneficiaries in *Sanders* included several family members who had been involved in the same car accident. The tortfeasor offered a settlement of $50,000, the extent of available insurance coverage. However, this sum was not designated as recovery for *medical expenses*, which by the terms of the reimbursement clause was the only sum recoverable as "duplicate benefits". The plan's outlays to one family member totaled $100,000; two others received a combined total of nearly $50,000.

The *Sanders* court considered several ways to determine how the tort proceeds should be allocated. The most promising of these, requiring the party better able to control the litigation to bear the burden of explaining how the proceeds were intended to be allocated, was discarded. Instead, the court adopted Wisconsin's make-whole doctrine as a default priority rule where the plan neither vested the trustees with interpretive discretion, nor explicitly stated which party was entitled to "first dollar" priority.

Plaintiffs fail to grasp the key factual distinction between *Sanders* and the present case. The Plan's subrogation clause does not limit Hormel's rights to the recovery of medical expenses. It plainly states that the Plan is subrogated to *all* rights of recovery which the Plaintiffs have. Plaintiffs artfully characterize the $200,000 settlement-in-principle as the "undesignated proceeds of a limited insurance settlement". This is the term the *Sanders* court used to describe the facts before it. It is wholly inapposite here because: (1) the tort proceeds *are* designated, in that they are solely related to Judy Waller's claim [5], and (2) the designation of these funds (or the lack thereof) is simply irrelevant because the subrogation clause includes all recovery rights which the Wallers have. *Cf. Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606, 609–610 (8th Cir.1994) (subrogation limited where ERISA plan only entitled to recover "medical expenses" paid by third party); *Davis v. Nepco*, 51 F.3d 752, 754–756 (7th Cir.1995) (subrogation limited where ERISA plan only entitled to recover for payments that "duplicate benefits" paid by plan). *Sanders* is thus inapplicable.

It is clear that the *Sanders* court did not view its limited conclusion as one of general applicability. Two years earlier, the same court decided *Cutting v. Jerome Foods*, 820 F.Supp. 1146 (W.D.Wis.1991), *aff'd* 993 F.2d 1293 (7th Cir.1993). The plan in *Cutting*, like the one here, broadly subrogated all rights of recovery. Presented with an identical plea to adopt a make-whole anti-subrogation rule, the *Cutting* court considered the Supreme Court's invalidation of state anti-subrogation law in *FMC v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). The Court's rationale was the necessity of uniform benefit calculation, a goal which would obviously have been thwarted by the application of different state subrogation laws.[6] See *FMC*, 498 U.S. at 59–61, 111 S.Ct. at 408–409; *Cutting*, 820 F.Supp. at 1151. This goal would also be frustrated by

---

**4.** The *Sanders* court misleadingly describes this language as a "subrogation clause"; it is in fact a reimbursement clause. The plan in *Sanders* did contain a subrogation clause, but it was contained in the Summary Plan Description given to plan participants. The quoted language was set forth in the plan's Articles of Association. Although the court presumably could have given effect to both of these distinct provisions, it interpreted the two as being in conflict. The plan provided that conflicts were resolved by deferring to the Articles, a rule which had the surely unintended effect of giving the participants the benefit of the more favorable provision. *Sanders*, 816 F.Supp. at 1344.

**5.** The settlement offer from American Family makes clear that Tom Waller's claim remains disputed. Griffin Aff. Exh. H.

**6.** It is surely no coincidence that each court which has engrafted the make-whole doctrine onto ERISA subrogation clauses has looked primarily to the common law of the state in which it sits. *See, e.g., Sanders* (Wisconsin law); *Barnes v. Independent Auto. Dealers of California*, 64 F.3d 1389, 1395 (9th Cir.1995) (California law); *Provident Life and Acc. Ins. Co. v. Williams*, 858 F.Supp. 907 (W.D.Ark.1994) (adopting Arkansas law); *Badger Equipment Co. v. Brennan*, 431 N.W.2d 900 (Minn.Ct.App.1988) (adopting Minnesota anti-subrogation law). This wholesale appropriation of state common law, while paying lip service to the Supreme Court's preemption doctrine, permits state law "to do through the back door what it may not do via the front." *Travitz v. Northeast ILGWU Fund*, 818 F.Supp. 761, 768 (M.D.Pa.1993).

"alter[ing] the terms of a written employee benefit plan" by modeling federal common law upon state anti-subrogation rules. *Id.; see also Serembus v. Mathwig,* 817 F.Supp. 1414, 1423 (E.D.Wis.1992) (applying state anti-subrogation law as federal common law would "subvert" Congress' intent in enacting preemption clause).

These same concerns are evident here. Plaintiffs ask no less than the judicial re-drafting of the clear written terms of their ERISA plan. Even under the *de novo* re-view of the Plan's provisions which is re-quired here, the Court cannot simply rewrite the subrogation clause. Unlike *Sanders,* there is no allocative confusion created by the drafting of the clause and an ambiguous settlement. Application of Plaintiffs' theory works a per se rule of invalidity with respect to ERISA subrogation clauses, a result which Congress, had it intended, could have effect-ed. *Serembus,* 817 F.Supp. at 1423. The Court cannot adopt this unauthorized expan-sion of federal common law.

Other federal courts adopting the make-whole doctrine have been faced with circum-stances far different than those here. *See Barnes v. Independent Auto. Dealers Associ-ation of California,* 64 F.3d 1389, 1396 (9th Cir.1995) (make-whole interpretation prem-ised upon plan's refusal to pay for covered expenses, forcing beneficiary to secure recov-ery from tortfeasor); *Provident Life and Acc. Ins. Co. v. Williams,* 858 F.Supp. 907, 912–913 (W.D.Ark.1994) (make-whole rule adopted as part of *equitable* reimbursement remedy; court determined that no contractu-al right existed).

Moreover, the Eighth Circuit has reached results which are simply inconsistent with the make-whole rule. In *Provident v. Lin-thicum,* 930 F.2d 14 (8th Cir.1991), the Court of Appeals refused to apply Arkansas' make-whole rule, despite the fact that "[i]t was not disputed that, in view of her severe and permanent injuries, Christy Linthicum has received far less compensation from the tort-feasor than that to which she would be enti-tled to 'make her whole' ". *Linthicum,* 930

F.2d at 16. Although the Supreme Court's holding in *FMC* and the Eighth Circuit's own *Baxter ex rel. Baxter v. Lynn,* 886 F.2d 182, 185–186 (8th Cir.1989) decision made the pre-emption analysis a foregone conclusion, this result counsels caution in announcing broad new principles of federal common law in this area. In *MedCenters Health Care, Inc. v. Ochs,* 26 F.3d 865, 867 (8th Cir.1994), the Eighth Circuit affirmed a "well-reasoned" district court opinion refusing to adopt Minnesota's make-whole rule as federal com-mon law in actions under the Federal Em-ployees Health Benefit Act, 5 U.S.C. § 8901, *et seq. See also Shell v. Amalgamated Cot-ton Garment Fund,* 871 F.Supp. 1173 (D.Minn.1994), *aff'd* 43 F.3d 364 (8th Cir. 1994) (refusing to adopt make-whole rule as federal common law; plan vested with discre-tion); *Trustees of Hotel Employees v. Kirby,* 890 F.Supp. 939, 943–945 (D.Nev.1995) (de-clining to follow *Sanders;* plan vested with discretion).

The Court also notes the judicial response to an analogous argument, that tort recovery for items such as pain and suffering are not subject to ERISA subrogation: this argu-ment "has been rejected by every federal court that has faced it." *Singleton v. IBEW Local 613,* 830 F.Supp. 630, 631 (N.D.Ga. 1993). *See, e.g., McIntosh v. Pacific Holding Co.,* 992 F.2d 882 (8th Cir.1993).[7] *Singleton* provides a concise illustration of why this is the case. There, the beneficiary's tort settle-ment designated $18,000 for pain and suffer-ing. The beneficiary argued that this desig-nation exempted the funds from the plan's reimbursement agreement, which broadly covered "any payment" which the beneficiary might receive as a result of his injuries. *Id.* at 632.

Although the precise words "make-whole rule" do not appear in the opinion, the same logic animated the beneficiary's argument. Because the plan in *Singleton* only provided medical payments, it of necessity follows that monies designated solely for pain and suffer-ing could not make the beneficiary "whole". At a minimum, the beneficiary could not have

---

**7.** The *Sanders* court noted that the undesignated recovery would likely have been insufficient to compensate the beneficiaries for their pain and

suffering, but this does not seem to have been a factor in its decision.

received a tort recovery for medical expenses. If the *Singleton* court had adopted the beneficiary's position, it would in effect have required full tort compensation prior to the exercise of subrogation rights.

The court declined to do so, noting, as is the case here, that "there is no requirement in either the plan description or the subrogation agreement that the monies recovered be for medical payments." *Id.* at 632. This is consistent with results reached elsewhere. *See Travitz v. Northeast ILGWU Fund,* 818 F.Supp. 761, 770 n. 11 (M.D.Pa.1993) (court notes that despite beneficiary's characterization of her "sizeable settlement" as one for pain and suffering, settlement agreement itself recites complete discharge of all claims; reimbursement not limited to recovery earmarked for medical expenses); *Dugan v. Nickla,* 763 F.Supp. 981, 984 (N.D.Ill.1991) (jury's apportionment of tort award irrelevant where reimbursement provision in ERISA plan included "any recovery"). A contrary rule would give beneficiaries an incentive to creatively recharacterize tort proceeds so as to avoid repayment.

Underlying these holdings is the awareness that in enacting ERISA, Congress sought to ensure that plan funds were "administered equitably, and that no one party, not even the beneficiaries, should unjustly profit." *Travitz,* 818 F.Supp. at 771. Plaintiffs seek to evade the force of the Plan's subrogation clause to the detriment of their fellow Plan participants. There is no showing in this record that the Plan has not dealt with the Wallers honestly and fairly. *Cf. Barnes,* 64 F.3d at 1396. Nor is there evidence that the Plan does not stand behind its promise, if necessary, to pay the full $1,000,-000 limit for medical expenses which is described in the Summary Plan Description. Griffin Aff. Exh. G. The Court is sympathetic to the plight of the Wallers, upon whom the tragic events of May 1993 are indelibly stamped. However, it is the duty of this Court to effectuate Congress' intentions in enacting ERISA, which sanction the subrogation clause at issue here.[8]

## V. Attorney's Fees

■ There remain two issues involving attorney's fees. Plaintiffs, anticipating victory, seek such an award under 29 U.S.C. § 1132(g). A prevailing plaintiff is normally entitled to recover an attorney's fee, except where such an award would be unjust. *Stanton v. Larry Fowler Trucking, Inc.,* 52 F.3d 723, 729 (8th Cir.1995). The Eighth Circuit has specifically declined to adopt the "prevailing plaintiff" presumption to prevailing defendants. *Stanton,* 52 F.3d 723 n. 6. Absent a contractual provision specifically governing the recoupment of fees by a successful Plan, *see FirsTier Bank v. Zeller,* 16 F.3d 907, 913–914 (8th Cir.1994), it appears that the five-factor test outlined in *Stanton* governs analysis of a defendant's fee award: (1) the degree of bad faith or culpability; (2) the ability of the party to satisfy an award of attorney's fees; (3) the deterrence value of an award of attorney's fees (4) whether the employee sought to benefit all participants and beneficiaries of an ERISA plan, or resolve a significant legal question regarding ERISA; and (5) the relative merit of the parties' respective positions. *Stanton,* 52 F.3d at 723.

The Court finds that while incorrect, Plaintiffs' position was undertaken in good faith. This area of law is unsettled, and the Wallers' claim has presented the opportunity to resolve a significant legal question regarding ERISA. Moreover, as described above, the events underlying this litigation imposed substantial economic and personal hardship upon the Wallers. Accordingly, a fee award would be unjust.

■ A second, more intriguing fee issue is raised by the Wallers' request that the Plan compensate them for the attorney's fees they incurred in settling with American Family. The Wallers reason that the Plan has reaped the fruits of their endeavors, without having to contribute to the effort. The Court has identified only two ERISA cases where such

8. In a footnote, Plaintiffs suggest that the phrase "receiving such payment", contained in the subrogation clause, entitles the Plan to recover only those sums actually disbursed to the Wallers, rather than the nearly $150,000 it has paid to medical providers. This argument is without merit.

**950**

an award has been made. In both *Serembus v. Mathwig,* 817 F.Supp. 1414, 1423 (E.D.Wis.1992) and *Dugan v. Nickla,* 763 F.Supp. 981, 984 (N.D.Ill.1991), two cases which rejected the make-whole rule, the courts nevertheless reduced the subrogation interest by one-third. This adjustment was predicated upon the belief that, without the beneficiaries' efforts, the plans would not have been reimbursed for their expenses. The Wallers make the same argument here.

The Court observes that it is extremely doubtful that the Plan, which owned the right to enforce the Wallers' tort claims, would have expended over $65,000 (⅓ of the settlement) in obtaining a settlement where liability and damages were fairly certain. The approach of *Serembus* and *Mathwig* thus emphasizes the cost to the beneficiaries (usually ⅓ of any recovery) over the value of these services to the plan (likely a variant of hourly billing). In light of the ability of ERISA plans to protect themselves by coordinating their own efforts with the beneficiaries' prosecution of the underlying claim, this emphasis is not misplaced. Clearly, the Wallers' efforts have redounded to the benefit of the Plan. As these cases recognize, it would be unjust to permit the Plan to reap where it has not sown. Accordingly, Plaintiffs are entitled to recover an attorney's fee equal to twenty-five percent of the settlement proceeds, or $50,000. The Plan's subrogation interest will reflect this deduction.

### CONCLUSION

The Court holds that the Plan may enforce its subrogation clause, which includes all rights to recovery which the Wallers have against third parties, notwithstanding the Wallers' claim that they have not been "made whole" by their tort settlement. However, the Wallers are entitled to an award of fees relating to their settlement efforts.

### ORDER

Accordingly, with respect to Court File No. 3–95CV–116, it is hereby ORDERED:

1. That Defendants' Motion for Summary Judgment is GRANTED;
2. That Plaintiffs' Motion for Summary Judgment is DENIED;

3. That the Plan is subrogated on a first priority basis to the proceeds of the settlement-in-principle reached by the Wallers and American Family;
4. That the Wallers are entitled to an award of attorney's fees in the amount of $50,000.
5. That the Plan's subrogation interest is reduced by $50,000, reflecting the award of attorney's fees.