**G.R. HERBERGER'S, INC.**

v.

**Barbara A. ERICKSON.**

No. 6–96–CV–211.

United States District Court,
D. Minnesota,
Sixth Division.

July 23, 1998.

Miaja L. Gunewitz, Jacobson, Harwood, Bennett & Erickson, Kevin Dale Hofman, Halleland, Lewis, Nilan, Sipkins & Johnson, Mpls, MN, for Plaintiff.

Andrew Stuart Birrell, Ian A.J. Pitz, Robert Travis Snider, Birrell, Dunlap & Ritts, Mpls, MN, for Defendant.

## ORDER

ROSENBAUM, District Judge.

The defendant sustained serious spinal injuries in a bicycle accident. Her employer's medical assistance plan paid her medical bills. The defendant has settled her claims arising out of the accident with a third party. The medical assistance plan now seeks reimbursement for her medical costs from the settlement funds.

The plaintiff asserts a subrogation interest in the settlement sum. The plaintiff claims its health insurance plan is a self-funded Medical/Dental employer-supplied ERISA ("Employee Retirement Income Security Act of 1974") Plan, and is entitled to reimbursement from the settlement proceeds. The defendant claims the Medical/Dental Plan is not qualified under ERISA, thus barring its recovery. Defendant also claims the settlement terms preclude any payment to the medical plan. On November 4, 1997, the Court heard oral argument on cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

### I. *Background*

Defendant, Barbara A. Erickson, suffered a severe spinal cord injury in a bicycle accident on April 17, 1994. The accident occurred on property belonging to Independent School District No. 347 ("ISD No. 347") located in Willmar, Minnesota.

At the time of the accident, Ms. Erickson was employed by plaintiff, G.R. Herberger's, Inc. ("Herberger's"). The company provided health insurance through its Medical/Dental Plan ("the Plan"). The company self-insured the Plan for medical expenses up to the sum of $100,000, through employee and employer contributions. To protect itself against catastrophic losses exceeding $100,000, the Plan secured a reinsurance contract covering payments in excess of $100,000 to any single person. According to the Plan's terms, the plaintiff, as the fiduciary, had discretionary authority to construe the Plan's terms and determine benefit eligibility. The Plan paid Erickson's medical expenses resulting from her accident in the amount of $271,992.60.

After the accident, Ms. Erickson brought a Minnesota state lawsuit, in Kandiyohi County District Court, seeking damages against ISD No. 347. Herberger's filed a Complaint and Motion to Intervene, claiming its subrogation interest was inadequately represented. The Kandiyohi County Court denied Herberger's motion. Ms. Erickson settled her lawsuit against ISD No. 347 for $1,200,000. The settlement agreement specifically stated that the monetary recovery precluded any past or future medical expenses.

The plaintiff claims it is entitled to reimbursement under the Plan's subrogation clause, which provides:

> In the event that any benefits are paid to a Covered Person under This Plan, This Plan, to the extent permitted by law, shall be subrogated and succeed to the Covered Person's right of recovery for medical expenses incurred against any third-party, and the Covered Person shall pay over to the Plan Administrator all sums recovered, by suit, settlement, or otherwise, on account of such medical expenses incurred, but not to exceed the amount of benefits paid under This Plan.

(Herberger's Summary Plan Description).

The Plan further requires that the covered person:

> [T]ake such action, furnish such information and assistance, and execute such as-

signments and other instruments as the Plan Administrator may require to facilitate enforcement of their rights and interest hereunder. The Covered Person shall also take no action prejudicing such rights and interests.

*Id.*

The plaintiff claims Ms. Erickson's separate recovery from ISD No. 347 and her lack of cooperation entitles it to reimbursement from the settlement proceeds.

The plaintiff further claims it qualifies as a self-funded medical/dental insurance program under ERISA, and is entitled to its subrogation interest. Erickson denies that plaintiff qualifies as a self-funded plan under ERISA's terms and denies plaintiff is entitled to reimbursement. She further alleges the Plan administrator improperly interpreted the Plan's terms. Finally, Erickson claims the settlement agreement's language places her recovery beyond the reach of the Plan's subrogation clause. The $271,992.60 is presently in escrow.

## II. *Discussion*

Summary judgment is appropriate if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties agree, and the Court concurs, there are no undisputed material facts at issue. Summary judgment is warranted.

The Court must determine whether the Plan is, in fact, governed by ERISA. *See* 29 U.S.C. § 1001 *et. seq.* Plaintiff administered the Plan as a benefit for its employees under a "Master Plan Document." Each employee received a condensed version of the Master Plan Document entitled "Summary Plan Description."

▮ A medical plan qualifies under ERISA if a reasonable person could ascertain: (1) the intended benefits; (2) beneficiaries; (3) source of financing; and (4) procedures for receiving benefits. *See Donovan v.*

*Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982); *see also Northwest Airlines, Inc. v. Federal Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994). In its 30–page Summary, Herberger's satisfies the four *Donovan* elements by: (1) enumerating the benefits available to the covered employees; (2) describing the terms of employee eligibility; (3) identifying the Plan as a "Self-funded Welfare Plan;" and (4) providing "the procedures to be followed in presenting claims for benefits."

The question is more complex in this case, however, because the Plan secured insurance for medical expenses exceeding $100,000. As an initial matter, the Supreme Court has determined that insured employee benefit plans are subject to indirect regulation by state insurance laws. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). It contrasted insured plans with self-insured employee benefit plans, which are completely exempt from state insurance laws. *See id.* The Court made this distinction by analyzing ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A). The savings clause states that, "[E]xcept as provided in subparagraph (B) [—the deemer clause—] nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, ..." *Id.* The deemer clause, however, provides that "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank trust company, or investment company." *Id.* On this basis, the Supreme Court found that an ERISA self-insured plan enjoys plenary exemption from state insurance laws and regulations.

Therefore, the Court must determine whether Herberger's employee benefit plan qualifies as self-funded.

Herberger's Plan is funded by employer and employee contributions, supplemented by purchased reinsurance covering individual losses exceeding $100,000. The ultimate question before the Court, then, is whether this $100,000 deductible self-insurance policy causes the plaintiff to lose its ERISA self-funded plan status. The Eighth Circuit has not spoken on the subject, and the defendant

claims there is a split among those circuits which have.

The Ninth Circuit has held that the purchase of reinsurance, covering only a portion of a plan's potential liability, does not negate its standing as a self-funded program. *See United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161–62 (9th Cir. 1986). Defendant argues that the Sixth Circuit has made a contrary decision, determining that purchasing reinsurance renders a medical plan "insured," rather than self-funded. *See Michigan United Food & Commercial Workers Union v. Baerwaldt*, 767 F.2d 308, 312–13 (6th Cir.1985). It appears to the Court, however, that later Sixth Circuit cases, as well as district court cases within the Sixth District, have effectively overruled *Baerwaldt's* holding. *See Lincoln Mut. Cas. Co. v. Lectron Products, Inc.*, 970 F.2d 206, 210 n. 3 (6th Cir.1992); *Auto Club Ins. Ass'n v. Safeco Life Ins. Co.*, 833 F.Supp. 637, 641–43 (W.D.Mich.1993) ("The Sixth Circuit has determined ... that a Plan's purchase of stop-loss insurance does not make it an insured Plan.").

■ In *Minnesota Chamber of Commerce & Industry v. Hatch*, 672 F.Supp. 393, 399 (D.Minn.1987), the Honorable Harry H. MacLaughlin of this court followed the Ninth Circuit, and found that self-insured benefit plans did not lose their status when they purchased reinsurance. This Court agrees, and finds that Herberger's purchase of reinsurance, protecting itself against a catastrophic loss exceeding $100,000, does not negate its status as an ERISA self-insured plan. The Court considers this to be consonant with the goals of ERISA—to protect the pensions and benefits of America's working men and women.

A contrary decision would jeopardize the entire benefit structure of this company. The company self-insures to secure maximum health care coverage for its employees. By doing so, it is able to devote virtually all of its health care contributions to paying employee-costs up to $100,000. By self-insuring, it avoids transaction costs expended through service charges and insurer profits on smaller claims. If the Plan loses its ERISA status by simply purchasing reinsurance to protect itself against a single catastrophic loss, it risks being wiped out by one enormous medical bill. This cannot have been the intent of Congress.

The Court can, of course, conceive of a fraudulent "self-insurance" program, where the Plan only self-insured for five or ten dollars. But this is absolutely not the case here. In accord with the better-decided cases, the Court finds this Plan to be self-insured.

■ Having found the Plan to be ERISA self-insured, it falls under the ERISA "deemer clause." As a result, the Minnesota "make whole" doctrine[1] is preempted. This is because ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Therefore, "where a plan specifically provides for priority or imbues the plan's fiduciary with discretionary authority to construe the terms of the plan, the make whole doctrine is both unnecessary and inapplicable." *Shell v. Amalgamated Cotton Garment*, 871 F.Supp. 1173, 1177 (D.Minn.1994).

Having found Herberger's Plan to be governed by ERISA, the Court considers its right to subrogation.

The Plan's plain language, set forth above, requires that a benefit recipient reimburse the Plan for benefits received from a third-party payor. Erickson does not deny this fact; she instead replies that the language is inapplicable in her situation. She bases this argument on her contention that her recovery was for non-medical expenses. She bolsters this point by citing the Plan's language that states, "a recovery which does not specify the matters covered thereby shall be deemed to include a recovery for medical expenses incurred to the extend [sic] of any actual loss ...." (Herberger's Summary Plan Description.)

1. Under the Minnesota "make whole" doctrine, an insured receives a priority in payments if the insured was less than fully compensated in a settlement. *See Blue Cross/Blue Shield of Rhode Island v. Flam*, 509 N.W.2d 393, 398 (Minn.App. 1993).

In fine, defendant argues that while the Plan provides for reimbursement of medical expenses, it specifically provides for instances where there is an *absence* of language covering medical expenses. From this position, defendant argues that her settlement does cover medical expenses—it "covers" them by excluding them. Therefore, she claims she bears no obligation to reimburse the Plan. Defendant's argument is unavailing.

As an initial matter, while this is an ERISA Plan, the Court feels comfortable in referring to Minnesota law concerning subrogation. In Minnesota, a plan's very use of the term "subrogation" creates a priority for plan recovery, regardless of other express language. *See Waller v. Hormel Foods Corp.*, 950 F.Supp. 941, 946 (D.Minn.1996). Where the subrogation clause of a plan states that it covers all rights of recovery, a defendant cannot defeat the plain language by designating, in the settlement, that the recovery precludes medical damages. *See Shell*, 871 F.Supp. at 1177. In fact, "the designation of these funds (or lack thereof) is simply irrelevant" where the subrogation clause includes all rights to recovery. *Waller*, 950 F.Supp. at 947.

■ This case, of course, is governed by federal, as opposed to Minnesota, common law. The Court determines that federal common law will protect the Plan and deny an unjust enrichment to a party whose attorneys use lexicological legerdemain to avoid ERISA Plan reimbursement.

First, the Court notes the Plan language requiring the benefit recipient to:

[T]ake such action, furnish such information and assistance, and execute such assignments and other instruments as the Plan Administrator may require to facilitate enforcement of their rights and interests hereunder. The Covered Person shall also take no action prejudicing such rights and interest.

(Herberger's Summary Plan Description).

Ms. Erickson clearly benefitted by receiving Plan benefits to pay her medical expenses. She now seeks to avoid reimbursement—subrogation—by relying on artful language insinuated into her settlement.

Having received Plan benefits, however, she bears a concomitant obligation to assist the Plan in obtaining subrogation. She will not be permitted to deprive the Plan of reimbursement, and thereby diminish its ability to provide similar health benefits to other Plan participants. This decision is in accord with *EBP HealthPlans, Inc. v. Knudson*, No. 3–95–242 (D.Minn. Feb. 29, 1996). There, considering identical subrogation language, the court required plan reimbursement because "any other result would undermine the intent of Congress in enacting ERISA." *Id.*

■ The Court next considers whether the Plan fiduciary has abused its discretion in seeking reimbursement. The Court finds that it has not. It is well-established that, assuming the Plan reposes discretion in a fiduciary, the fiduciary's decision is accorded deferential review. An abuse of discretion occurs only if "the action is 'extraordinarily imprudent or extremely unreasonable.'" *Heise v. Genuine Parts Co.*, 900 F.Supp. 1137, 1145–46 (D.Minn.1995) (quoting *Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan*, 25 F.3d 616, 621 (8th Cir.1994)). In making this analysis, a court must "not search for the best or preferable interpretation of a plan term: it is sufficient if the interpretation is consistent with a commonly accepted definition." *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1344 (8th Cir. 1997). In analyzing a fiduciary's decision, the Court considers five factors:

1. Whether the interpretation is consistent with the goals of the plan.

2. Whether the interpretation renders any language in the plan meaningless or makes the plan internally inconsistent.

3. Whether the interpretation conflicts with ERISA.

4. Whether the interpretation has been consistent.

5. Whether the interpretation is contrary to the clear language of the Plan.

*Finley v. Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir.1992).

■ The Court finds that Herberger's interpretation is consistent with the goals of the Plan. The Plan's purpose is to promote the health and welfare of all covered persons through a comprehensive payment of medical benefits. (Herberger's Master Plan Document.) A decision to require subrogation from a third-party settlement is consistent with the Plan's goals. Subrogation protects and replenishes the Plan's assets to insure further access to the health and welfare benefits for future employees.

Herberger's interpretation of the Plan maintains the meaning of its language and is internally consistent. Defendant's narrow focus on the *exclusion* of language covering medical reimbursement flies in the face of the Court's duty to consider the Plan's language as a whole. When considered in whole, it is clear that, when the Plan pays benefits, it "shall be subrogated and succeed to [Erickson's] right of recovery for medical expenses incurred against any third party, ..." (Herberger's Summary Plan Description).

Herberger's Plan also satisfies the test's third and fourth elements. The defendant has pointed to neither substantive nor procedural conflicts between ERISA and the interpretation of the Plan. Nor has the defendant identified instances where plaintiff has interpreted the Plan inconsistently. Finally, plaintiff's interpretation is fully consistent with the clear language of the Plan.

ERISA provides that "the court in its discretion may allow reasonable attorneys' fees and costs of action to either party." 29 U.S.C. § 1132(g). Each party seeks attorney's fees as a result of this litigation. As the Court considers this an area in which the law is not yet fully settled, it denies attorney's fees and costs to either party.

III. *Conclusion*

Based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted.

2. Defendant's motion for summary judgment is denied.

3. Each party's request for attorney's fees is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.