Jimmy STANTON, Appellee,

v.

LARRY FOWLER TRUCKING,
INC., Appellant.

Jimmy STANTON, Appellant,

v.

LARRY FOWLER TRUCKING,
INC., Appellee.

Nos. 94–2221, 94–2360.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1994.

Decided April 4, 1995.

Stephen Curry, Little Rock, AR, argued, for appellant.

Joan C. Maxey, Little Rock, AR, argued (Tracy F. Bagwell, on the brief), for appellee.

Before MAGILL and BEAM, Circuit Judges, and SHANAHAN,* District Judge.

MAGILL, Circuit Judge.

Larry Fowler Trucking, Inc. appeals the district court's judgment in favor of Jimmy Stanton in Stanton's ERISA/COBRA action. Fowler Trucking alleges the district court erred in: refusing to grant its motion to amend the judgment or for j.n.o.v., determining Fowler Trucking had the burden of proving Stanton received notice required by 29 U.S.C. § 1166(a)(4) (1988), and determining Fowler Trucking did not meet this burden; awarding attorney's fees to Stanton; and failing to award Fowler Trucking attorney's fees. Stanton cross-appeals, alleging the district court erred in granting summary judgment against Stanton on his state law claim for wrongful discharge. We affirm in part and reverse in part.

## I. BACKGROUND

Larry Fowler Trucking, Inc. (Fowler Trucking) is a flatbed, long-haul, common carrier. In 1989, Fowler Trucking consisted of forty-three company-owned trucks, with an equivalent number of driver employees. At the time of the trial, Fowler Trucking had expanded to seventy-six company-owned trucks. Fowler Trucking provided a group health insurance plan (the plan) to its employees at no charge as a fringe benefit. Employees became eligible for coverage upon completing an initial ninety days of employment. The plan also offered family coverage to employees at an additional charge. This additional charge was usually deducted from the employee's paycheck. Arkansas Blue Cross/Blue Shield provided the

plan insurance. Fowler Trucking has a dual role—it is both the employer and the administrator of the plan. The plan is subject to the requirements of the Employee Retirement Income Security Act (ERISA), as amended by the Consolidated Omnibus Budget Reconciliation Act (COBRA).

Stanton initially began working as a driver for Fowler Trucking in June 1989. Upon completion of ninety days of employment, he became eligible under the plan for health insurance, received copies of all relevant insurance material and elected family coverage. Stanton resigned from Fowler Trucking on December 4, 1989, due to medical problems. At that time, Sylvia Fowler met with Stanton and explained Stanton's options with respect to continuing his health insurance coverage. Ms. Fowler gave Stanton a form that he could use to elect to continue his health insurance. This form was completed and mailed directly to Arkansas Blue Cross/Blue Shield, and he elected to continue his health insurance after termination of his employment with Fowler Trucking.

In February 1990, Stanton was rehired by Fowler Trucking. Stanton once again received a copy of the Blue Cross/Blue Shield Insurance Benefit Summary and again elected family coverage upon the expiration of his first ninety days of employment. On June 20, 1990, Stanton suffered a work-related injury to his back. He was unable to work as a result of this injury and began receiving workers' compensation benefits. He never returned to work.

On July 2, 1990, Stanton met with Sylvia Fowler. Stanton informed Ms. Fowler that he was unsure when he would be able to return to work. The parties dispute what occurred at the rest of this meeting. Stanton states that Ms. Fowler informed him that his coverage under the plan would continue to be provided by Fowler Trucking as long as he remained an employee. Stanton states that Ms. Fowler informed him that if he wanted to continue his family coverage, he would have to pay the premiums himself, as he no longer was receiving a paycheck from which

* THE HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska, sitting by designation.

they could be withheld. Ms. Fowler asserts that she informed Stanton that if he wanted to continue his coverage under the plan, he would have to remit the premiums to her while he was on disability leave. Ms. Fowler asserts that Stanton signed a card at this meeting, evidencing his rights to continue his health insurance under COBRA. This card is undated. Stanton asserts that he signed this card in December 1989 when he left Fowler Trucking the first time and that he received no notice of his COBRA rights at the July 2, 1990 meeting with Ms. Fowler.

In October 1990, Stanton was hospitalized for an unrelated cardiac disorder. Stanton states that during this hospitalization, he became aware that he did not have health insurance. Stanton informed the hospital that he had coverage through his employer, Fowler Trucking. Stanton states that the hospital employees followed up on this information and then informed him that he was no longer employed by Fowler Trucking and he did not have health insurance.

Stanton sued in federal district court to recover for the tort of outrage, wrongful discharge and failure to comply with ERISA/COBRA. Immediately prior to trial, the district court granted summary judgment in favor of Fowler Trucking on Stanton's outrage and wrongful discharge claims.

The case then proceeded to a bench trial on the ERISA/COBRA issue. The main issue at trial was whether Stanton received notice pursuant to 29 U.S.C. § 1166. Fowler Trucking asserted that it hand-delivered the required notice to Stanton. Stanton denied receiving this notice, asserting that Fowler Trucking informed him that he was still covered under the plan, but that he would have to pay the premiums if he wanted to continue his family insurance coverage. The court determined that the evidence was in equipoise as to this factual issue and resolved it against the party bearing the burden of proof: Fowler Trucking. Accordingly, the court entered judgment in favor of Stanton and awarded him attorney's fees with respect to his ERISA/COBRA claim. Fowler Truck-

ing moved to amend the judgment and for j.n.o.v., arguing that the district court erred in shifting to Fowler Trucking the burden of proving notice pursuant to 29 U.S.C. § 1166 and in finding that Fowler Trucking did not meet this burden. The district court denied this motion.

Fowler Trucking appealed, raising the following issues: (1) the district court erred in denying its motion to amend the judgment; (2) the district court erred in awarding Stanton attorney's fees; and (3) the district court erred by refusing to award Fowler Trucking attorney's fees with respect to Stanton's state law claims. Stanton cross-appealed, alleging the district court erred in determining that Ark.Code Ann. § 11–9–107(e) (Supp. 1993) applied retroactively to bar his wrongful discharge claim.

## II. DISCUSSION

### A. ERISA/COBRA Claims

█ Fowler Trucking argues that the district court erred in determining that it bore the burden of proving Stanton received the notice required by 29 U.S.C. § 1166. The district court noted that this involves an issue of first impression. We review the district court's legal conclusions de novo and affirm.[1]

COBRA requires that employers give former employees the opportunity to continue their health insurance under the employer's plan if a qualifying event occurs. 29 U.S.C. § 1161 (1988). COBRA also requires the insurance plan to provide employees notice of their rights under COBRA on two separate occasions. The first notice must be given when coverage commences under the plan, in this case after the initial ninety-day period of employment. 29 U.S.C. § 1166(a)(1). The second notice must be given to the employee by the plan administrator after a qualifying event occurs. 29 U.S.C. § 1166(a)(4). The parties agree that a qualifying event occurred on July 2, 1990, and that Stanton was entitled to notice of his COBRA rights. The only issue before us is whether Stanton or Fowler Trucking, the plan's administrator,

---

1. Because we agree with the district court that Fowler Trucking did not meet its burden of proving that it gave Stanton the second COBRA notice, we decline to address the alternative holding that if Fowler Trucking gave notice, that notice was inadequate.

has the burden of proving that the second COBRA notice was given.

The district court held that 29 U.S.C. § 1059 (1985) shifted the burden of proof to Fowler Trucking when a fact issue concerning Stanton's rights to benefits arose. Section 1059 requires employers to maintain records "sufficient to determine the benefits due or which may become due to [its] employees." Stanton's COBRA right to continue his health care coverage and notice thereof are benefits due him. Accordingly, in its role as employer, Fowler Trucking has a statutory duty to maintain records to determine if notice was given pursuant to § 1166. However, Stanton's claim is based upon Fowler Trucking's actions in its role as an administrator of the plan: Under § 1166(a)(4), the administrator, not the employer, has a duty to provide COBRA notice to the employee. Section 1059[2] only requires the employer, not the administrator, to keep records. However, 29 U.S.C. § 1027 (1988)[3] imposes a recordkeeping requirement on administrators. Accordingly, as an administrator, Fowler Trucking is required under § 1027 to maintain records evidencing the notice given pursuant to § 1166(a)(4).[4]

In a related context, the Sixth, Ninth and Eleventh Circuits hold that an employer's failure to comply with its statutory duty to maintain adequate records shifts the burden to the employer to prove the number of hours worked. *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696 (6th Cir.1994); *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338–39 (9th Cir.1988); *Combs v. King*, 764 F.2d 818, 827 (11th Cir. 1985). The issue in these cases was whether the employers made sufficient contributions to pension or welfare benefit plans governed by ERISA; the contributions were dependant upon hours worked on specific jobs or by specific employees (*e.g.*, union members). These cases note that § 1059 requires the employer to keep records of its employees' hours worked, that employees maintaining these records themselves is unlikely, and that the policy underlying ERISA supports shifting the burden of proof. These cases rely on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), a Supreme Court case involving the Fair Labor Standards Act that shifted the burden of proof of hours worked by employees to the employer.

2. Section 1059(a)(1) provides:

Except as provided by paragraph (2) every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees. The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a participant under the plan and who—

(A) requests such report, in such manner and at such time as may be provided in such regulations,

(B) terminates his service with the employer, or

(C) has a 1–year break in service (as defined in section 1053(b)(3)(A) of this title).

The employer shall furnish to the plan administrator the information necessary for the administrator to make the reports required by the preceding sentence. Not more than one report shall be required under subparagraph (A) in any 12–month period. Not more than one report shall be required under subparagraph (C) with respect to consecutive 1–year breaks in service. The report required under this paragraph shall be sufficient to inform the employee of his accrued benefits under the plan and the percentage of such benefits which are nonforfeitable under the plan.

3. Section 1027 provides:

Every person subject to a requirement to file any description or report or to certify any information therefor under this subchapter or who would be subject to such a requirement but for an exemption or simplified reporting requirement under section 1024(a)(2) or (3) of this title shall maintain records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained, or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of not less than six years after the filing date of the documents based on the information which they contain, or six years after the date on which such documents would have been filed but for an exemption or simplified reporting requirement under section 1024(a)(2) or (3) of this title.

4. Section 1166 is included within the subchapter referred to in the text of § 1027.

■ Similarly, the policy behind COBRA supports shifting the burden of proof to the administrator. COBRA was enacted, at least in part, to address a concern "with reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 241, 99th Cong., 2d Sess., pt. 1, at 44 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 622. The employer bears the major responsibility for complying with the requirements of COBRA. *Kidder v. H & B Marine, Inc.,* 734 F.Supp. 724, 730 (E.D.La.1990), *aff'd in part, rev'd in part,* 932 F.2d 347 (5th Cir.1991). ERISA's general policy of increasing the information and data available to plan participants also supports burden-shifting. *See Combs,* 764 F.2d at 822. Furthermore, the administrator is in a better position to prove the COBRA notice was given. It is only fitting to place the burden of proving notice was given on the party required to give the notice, the administrator. To hold otherwise would place the employee in the untenable position of proving a negative and would reward shoddy record-keeping practices by the administrator and the employer. Records maintained by Fowler Trucking are probably the only evidence available to prove whether it in fact complied with the notice requirement.

Furthermore, the district court cases addressing this issue proceed under the assumption that the administrator bears the burden of proving the second COBRA notice was given. All of these cases involve an employer, acting as plan administrator, mailing the second COBRA notice to the former employee. In these cases, the district court requires the employer to establish that the notice was in fact mailed to the last known address of the employee to raise the presumption of receipt. In *Martin v. Marriott Corp.,* 15 E.B.C. 1217, 1992 WL 84902 (D.D.C.1992), the court denied summary judgment to Marriott because it mailed Martin's second COBRA notice to an old address after she provided the company with a recent address. The court noted that Marriott did not produce any documentation establishing that this notice was sent, thereby failing to establish the presumption that a letter properly addressed and mailed was received. *Id.* at 1221 n. 3, 1992 WL 84902 *3. In *Truesdale v. Pacific Holding Co.,* the district court found that the employer complied with § 1166 when it sent a COBRA notice to an incomplete address because the employee failed to inform the employer of the proper address. 778 F.Supp. 77, 81 (D.D.C.1991). In *Jachim v. KUTV Inc.,* the district court determined that the employer's uncontradicted testimony that it mailed the COBRA notice to Jachim's current address established compliance with the COBRA requirements. 783 F.Supp. 1328, 1333–34 (D.Utah 1992). In *Phillips v. Riverside, Inc.,* the court determined that the employer did not prove it sent the second COBRA notice because it could not produce a properly addressed COBRA notice, it did not document when the COBRA notice was sent to Phillips, there was no testimony that anyone actually deposited Phillips' COBRA notice in the mail, nor was any evidence of the employer's customary mailing practices introduced. 796 F.Supp. 403, 407 (E.D.Ark.1992).

■ Accordingly, we agree with the district court that Stanton's testimony that he never received the notice required by § 1166(a)(4) shifted the burden to Fowler Trucking to prove that it complied with § 1166.[5] Fowler Trucking had a statutory duty to maintain records sufficient to show it complied with the requirements of § 1166(a)(4). Fowler Trucking argues that this essentially requires them to guarantee

---

5. Fowler Trucking urges the court to adopt the shifting burden analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1820, 36 L.Ed.2d 668 (1973), used in Title VII cases. This analysis has been adopted in ERISA cases involving discriminatory discharge. *See, e.g., Dister v. Continental Group, Inc.,* 859 F.2d 1108 (2d Cir.1988). However, we decline this invitation because the COBRA notice requirement is not analogous to discriminatory discharge. Fowler Trucking has a statutory duty to maintain records to show it complied with the requirements of § 1166. The burden to prove compliance with § 1166 is shifted to Fowler Trucking because Fowler Trucking's failure to maintain these records should not be allowed to defeat Stanton's right to recovery. In fact, absence of these records is probative of the fact such notice never occurred.

receipt of the COBRA notice. We disagree; we simply affirm the district court's decision that when the evidence is in equipoise, the issue is resolved against the party with the burden of proof on that issue. This case is unlike the cases involving the mailing of a properly addressed second COBRA notice, because those cases involve a presumption of receipt that is not applicable here.

 Fowler Trucking also argues that the district court erred when it determined that the evidence on the issue of notice was in equipoise, thereby resolving the issue against Fowler Trucking. We "must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992). At trial, Stanton testified he never received notice from Fowler Trucking concerning his rights to continue his health insurance; Ms. Fowler testified that she personally handed Stanton this notice. The district court determined that the evidence on this issue was in equipoise and resolved it against the party bearing the burden of proof. We are bound by the district court's assessment of the witnesses' credibility and its determination of weight of their testimony. Accordingly, since evidence was presented at trial that Stanton never received the required notice, the district court properly denied the motion for j.n.o.v.

 Fowler Trucking argues that it met its burden of recordkeeping in this case. At trial, it produced an undated card signed by Stanton that it claims shows he received the second COBRA notice. However, under the unique circumstances of this particular case, Fowler Trucking was required to provide Stanton with COBRA notices on four separate occasions. An undated card bearing Stanton's signature is not probative that it complied with the COBRA notice requirement at issue.

## B. Attorney's Fees

Fowler Trucking argues that the district court erred in awarding attorney's fees to Stanton.

 The district court has discretion to award attorney's fees in ERISA actions. 29 U.S.C. § 1132(g) (1985). We review the district court's award of attorney's fees for an abuse of discretion. *Jacobs v. Pickands Mather & Co.*, 933 F.2d 652, 659 (8th Cir. 1991).

 We have previously held that a plan participant who prevails in a suit to enforce his rights under ERISA "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1356 (8th Cir.1980) (internal quotations and citation omitted). The losing defendant bears the burden of showing special circumstances to preclude an attorney's fees award. *Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496, 500 (8th Cir.1989). It is undisputed that Stanton is a beneficiary. Thus, he should receive attorney's fees unless Fowler Trucking demonstrates special circumstances.[6]

 The district court should consider the following factors when determining whether to award attorney's fees: (1) the degree of the employer's bad faith or culpability; (2) the ability of the employer to satisfy an award of attorney's fees; (3) the deterrence value of an award of attorney's fees; (4) whether the employee sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA; and (5) the relative merit of each party's position. *Jacobs*, 933 F.2d at 659. The district court carefully considered each of these factors when it decided to award Stanton attorney's fees. The court found Fowler Trucking blameworthy in failing to properly notify Stanton of his rights under COBRA and that it failed to

---

**6.** Fowler Trucking asserts that in *Consolidated Beef Industries v. New York Life Insurance*, 949 F.2d 960 (8th Cir.1991), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992), we abandoned the prevailing plaintiff approach set forth in *Landro*. *Consolidated Beef* is inapposite because it involved a prevailing defendant, not a prevailing plaintiff, and *Landro* limited its presumption to plaintiffs prevailing in an ERISA suit. *Id.* at 966.

properly advise at least one other employee of his COBRA rights. The court noted that Fowler Trucking made no showing that paying an award of attorney's fees would result in a financial hardship. The court also found that the award has a deterrence value because it encourages the company to fully inform its employees of their COBRA rights and comply with its statutory recordkeeping requirements. In this respect, the court also found that other plan participants would benefit. The court found the last factor to be neutral as both parties had meritorious positions. We believe that the district court acted within its discretion in awarding Stanton attorney's fees, and we affirm.

### C. Dismissal of Wrongful Discharge Claim

Stanton argues that the district court erred in granting Fowler Trucking's motion for summary judgment on Stanton's wrongful discharge claim. Stanton's complaint, filed October 28, 1991, included a state law claim alleging he was wrongfully discharged in retaliation for filing a workers' compensation claim in June 1990. This cause of action was first recognized by the Arkansas Supreme Court in *Wal–Mart Stores, Inc. v. Baysinger*, 306 Ark. 239, 812 S.W.2d 463 (1991), as a public policy exception to the at-will employment doctrine. *Id.* at 467. In response to this case and several others, the Arkansas legislature in 1993 passed Ark.Code Ann. § 11–9–107, which expressly prohibits this cause of action.[7] The district court determined that § 11–9–107(e) should be applied retroactively to bar Stanton's claim.

---

7. Section 11–9–107(e) provides:

 A purpose of this section is to preserve the exclusive remedy doctrine and specifically annul any case law inconsistent herewith, including but not necessarily limited to: *Wal–Mart Stores, Inc., v. Baysinger*, 306 Ark. 239, 812 S.W.2d 463 (1991); *Mapco, Inc. v. Payne*, 306 Ark. 198, 812 S.W.2d 483 (1991); and *Thomas v. Valmac Industries, Inc.*, 306 Ark. 228, 812 S.W.2d 673 (1991).

8. Section 41 reads:

 EMERGENCY. It is hereby found and determined by the General Assembly that the Workers' Compensation Law is in immediate need of substantial revision; that this act accomplishes immediate revision; and that this act

We review the district court's grant of summary judgment de novo. *Landreth v. First Nat'l Bank of Cleburne County*, 45 F.3d 267, 268 (8th Cir.1995). The district court based its decision on Arkansas law. We review the district court's interpretation of Arkansas law de novo, giving its decision no deference. *Slaughter v. American Casualty Co.*, 37 F.3d 385, 387 (8th Cir. 1994) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)). We reverse.

In Arkansas, it is well established that "all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used." *Union Nat'l Bank v. Barnhart*, 308 Ark. 190, 823 S.W.2d 878, 882 (1992). The legislation currently codified at § 11–9–107 was originally enacted as Arkansas 1993 Session Law, Act 796, § 6. This act was enacted with an emergency clause which states: "Furthermore, the provisions of this act shall apply only to injuries which occur after July 1, 1993." Acts 1993, No. 796, § 41.[8] Accordingly, it is clear the legislature did not intend § 11–9–107(e) to be applied retroactively. Therefore, we reverse the district court's decision that the language of § 11–9–107(e) necessarily implied a retroactive application.[9]

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's decision that Fowler Trucking

---

shall go into effect as soon as is practical which is determined to be July 1, 1993; and that unless this emergency clause is adopted, this act will not go into effect until after July 1, 1993. Therefore, an emergency is hereby declared to exist, and this act being immediately necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after July 1, 1993. Furthermore, the provisions of this act shall apply only to injuries which occur after July 1, 1993.

9. Because we are reversing the district court's grant of summary judgment with respect to Stanton's wrongful discharge claim, we decline to consider Fowler Trucking's arguments that it is entitled to attorney's fees because it prevailed on this issue and Stanton's outrage claim.

has the burden of proving Stanton received the notice required by 29 U.S.C. § 1166, we reverse its grant of summary judgment against Stanton for his wrongful discharge claim, and we remand for proceedings consistent with this opinion.