**Vynnette HAMANNE and Kenneth Earl Hamanne, Plaintiffs,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, Defendant.**

No. CIV.3–96–1163 (MJD/AJB).

United States District Court, D. Minnesota.

March 30, 1998.

Edward M. Glennon, David G. Newhall, Christopher H. Yetka, Garrett M. Weber, Lindquist & Vennum, Minneapolis, MN, for Plaintiffs.

James L. Coghlan, Elizabeth A. Longo, Coghlan, Joyce, Kukankos & D'Arcy, Chicago, IL, Richard P. Mahoney, Victor E. Lund, Mahoney, Dougherty & Mahoney, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

### BACKGROUND

From 1988 to 1992, Vynnette Hamanne was under the psychiatric care of Dr. Diane Humenansky. In 1994, the Hamannes filed suit against Humenansky, alleging malpractice for planting false memories of sexual abuse in Vynnette Hamanne which resulted in severe physical and emotional injury. The Hamannes' claim went to a jury trial and in 1995 they obtained a verdict of $2.67 million in damages. In June 1996, the Hamannes settled the case with Humenansky's liability insurer for a confidential sum. (Compl. at 2–3).

Defendant Central States, Southeast & Southwest Areas Health and Welfare Fund ("Central States") is a self-funded employee welfare benefit plan established pursuant to the Employee Retirement Income Security Act ("ERISA"). Kenneth Hamanne became a covered individual under the welfare fund pursuant to the terms of a collective bargaining agreement between his union and employer. Vynnette Hamanne is also covered under the Plan as Kenneth Hamanne's wife. Pursuant to the Plan, Central States paid for medical expenses related to the underlying

action in this case for both Vynnette and Kenneth Hamanne. (Compl. at 1–2).

Prior to the trial and settlement of the lawsuit, the Hamannes notified Central States of their action. (Yetka Aff. ¶ 5, Exh. B). Although Central States asserted its right to subrogation, it took no action to intervene in the lawsuit. (Yetka Aff. ¶ 6, Exh. C). Section 11.14 of the benefit plan defines the extent of Central States' subrogation interest as follows: [1]

In the event the Fund provides benefits for injury, illness or other loss (the "Injury") to any person, the Fund is subrogated to all rights of recovery that person, his heirs, guardians, executors, or other representatives...may have arising out of the Injury. The Fund's subrogation rights include, without limitation, all rights of recovery a Covered Individual has: 1) against any person, insurance company or other entity that is in any way responsible for providing compensation, indemnification or benefits for the Injury; 2) under any law or policy of insurance or accident benefit plan providing No Fault, Personal Injury Protection or financial responsibility insurance; 3) under uninsured or underinsured motorist insurance; 4) under medical reimbursement insurance not purchased by the Participant submitting the claim and, 5) under specific risk accident and health coverage or insurance, including, without limitation, premises or homeowners medical reimbursement insurance or athletic or sports "school" or "team" coverages or insurance.

The Covered Individual and anyone acting on his behalf shall, on request, provide the Fund with information it deems necessary to protect its right of subrogation and shall do nothing to prejudice that right and shall cooperate with the Fund in the enforcement of its subrogation rights. The Fund Trustees are vested with full discretionary authority to determine eligibility for benefits, to construe subrogation and other Plan provisions and to reduce or compromise the amount of the Fund's recoverable interest where, in the sole discretion of the Trustees, circumstances warrant such action. The amount of the Fund's subrogation interest shall be deducted first from any recovery by or on behalf of the Covered Individual. The Fund shall not be responsible for any expenses or fees incurred in connection with a recovery unless it shall have agreed in writing to pay those expenses or fees. The Fund reserves the right to initiate an action in the name of the Covered Individual in order to recover its subrogation interest.

(Yetka Aff., Exh. I).

During the trial, the Hamannes submitted a summary of all the medical expenses alleged to be related to Humenansky's malpractice. (Yetka Aff. ¶ 9, Exh. E). The jury subsequently awarded damages to compensate for all of the submitted medical expenses, which totaled $143,628. In May 1996, the Hamannes' attorney mailed Central States a summary showing which insurer paid each of the submitted medical expenses and the amounts paid. The summary showed that Central States had paid $37,259 of the medical expenses awarded by the jury. The letter also stated that Central States' proportionate share of attorneys fees and costs would be deducted, thus entitling them to $18,771 for the subrogation claim. Central States did not respond to this letter.

In September 1996, the Hamannes sent a check for $18,771 to Central States, which was tendered in full satisfaction of the subrogation claim. Two months later, the subrogation committee of Central States considered and rejected the Hamannes' proposed resolution of the subrogation claim. Rather, the committee determined that Central States was entitled to a total subrogation claim of $94,053.[2] The additional $56,794 in

---

1. Although Defendant's refer to three different versions of the subrogation terms of the Plan, the Court concludes that the Plan in effect from July 11, 1991 to July 17, 1994 is the applicable plan primarily because it is the version on which the parties have relied upon (Plaintiff's Br. at 4, fn. 2) and because it is the version that was in effect for the majority of expenses at issue. Nevertheless, the differences between the various versions is not determinative of this Court's analysis.

2. Central States initially claimed an additional $960 for medical expenses paid on behalf of Kenneth Hamanne. However, at trial, the jury concluded that Kenneth Hamanne's claim for malpractice was barred by the statute of limita-

medical expenses sought by Central States relates to expenses incurred in the treatment of Vynnette Hamanne for polychondritis, which is an inflammatory disease of the cartilage. The committee further concluded that under the terms of the Plan, the Hamannes were not entitled to payment of attorney fees and costs from Central States. (Yetka Aff., Exh. H). On administrative appeal, the trustees of Central States upheld this decision. (Def.Exh. T).

The additional $56,794 in medical expenses claimed by Central States is the basis of the dispute in this case— the Hamannes claim that they did not seek to recover medical expenses for this condition at trial because their expert could not verify that it was caused or aggravated by Humenansky's malpractice. Thus, the Hamannes argue, Central States is not subrogated to those expenses because they were not recovered at trial. Central States, on the other hand, contends that Vynnette Hamanne's polychondritis was aggravated by Humenansky's malpractice. Because Central States paid for those expenses on Vynnette Hamanne's behalf, Central States claims that it is entitled to recover those expenses from the settlement with Humenansky's liability insurer despite the fact that such expenses were not submitted and recovered at trial.

The Hamannes subsequently brought this declaratory action to determine the amount of Central States' subrogation claim. This matter is currently before this Court on the parties' cross-motions for summary judgment.

## DISCUSSION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992). On a motion for summary judgment, the Court must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. *Burnham v. Ianni*, 119 F.3d 668, 673 (8th Cir.1997).

■ Decisions of an ERISA plan administrator are typically reviewed *de novo*, unless the plan gives discretionary authority to the plan administrators. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Because the benefit plan at issue in this case gives discretionary authority to the trustees of Central States, (Yetka Aff., Exh. I, § 11.14), their decision will be reviewed under an abuse of discretion standard. *Firestone Tire*, 489 U.S. at 115, 109 S.Ct. 948; *Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997). Under this standard, the trustees' decision will not be overturned unless it is without reason, unsupported by substantial evidence, or erroneous as a matter of law. *Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir.1996).[3]

### A. Subrogation claim

■ Central States seek a total amount of $94,053 in expenses paid for Vynnette Hamanne. Central States thus seeks a total of $56,794 in medical expenses that were neither submitted to the jury nor recovered by the Hamannes in the underlying malpractice action. It is a well-established rule that subrogation requires the ERISA plan to "stand in the shoes" of the beneficiary. *Wal-*

---

tions. In its motion for summary judgment, Central States does not assert subrogation for these expenses, apparently conceding that it cannot recover this amount.

3. Although the parties dispute whether the Hamannes were required to exhaust administrative remedies pursuant to the terms of the Plan, that issue is moot because Central States concedes that the Hamannes have now exhausted such remedies. (Def. Br. at 11). Furthermore, the Plan provides for an administrative appeals process only "[u]pon notification that *a claim for*

*benefits* has been totally or partially rejected." (Yetka Aff. Exh. J, § 10.02) (emphasis added). When exhaustion of remedies is required by a particular plan, the Eighth Circuit has held that the Plan's language must be strictly construed. *Anderson v. Alpha Portland Indus.*, 752 F.2d 1293, 1298–99 (8th Cir.1985) (plan's requirement for exhaustion of remedies by "employees" did not apply to plaintiffs who are "retirees"). Because the subrogation claim at issue is not a "claim for benefits", the exhaustion requirement does not apply here.

ler v. Hormel Foods Corp., 950 F.Supp. 941, 944 (D.Minn.1996), aff'd, 120 F.3d 138 (8th Cir.1997). This prevents the beneficiary from recovering twice— once from the plan and once from the tortfeasor. Id. As reiterated by the Eighth Circuit, "the party entitled to subrogation...can be subrogated to no greater rights than the one in whose place he is substituted." Iowa Electric Light & Power Co. v. Mobile Aerial Towers, Inc., 723 F.2d 50, 53 (8th Cir.1983). The Eighth Circuit has further recognized that "once the injured person settles a claim and thus extinguishes his own right to further pursuit of that claim, the rights of the party with the subrogation interest in the claim are extinguished as well." Shell v. Amalgamated Cotton Garment, 43 F.3d 364, 366 (8th Cir.1994).

The Plan provides that Central States is entitled to all rights of recovery that the Hamannes may have arising out of Humenansky's malpractice. (Yetka Aff., Exh. I). In interpreting a similarly worded subrogation clause, the Eighth Circuit in Waller declined to adopt the "make-whole rule" in regards to subrogation, which provides that the insurer is not entitled to enforce its subrogation rights until the insured is fully compensated for injuries. Waller, 120 F.3d at 139–40. Thus, as Central States asserts, the Plan provides that Central States is entitled to all rights of recovery, not just to those proceeds designated as compensation for "medical expenses."

█ In Waller, the insured plaintiffs were injured in a serious car accident and incurred over $146,000 in medical costs which were paid for by an ERISA plan. The plaintiffs subsequently asserted claims against their auto insurer, who was also the insurer of the negligent motorist. Pursuant to both auto insurance policies, the parties agreed to settle Plaintiffs' claims for $200,000, on the condition that the ERISA plan sign a release of its subrogation interest which entitled the Plan to "all rights of recovery" possessed by the insured. Id. at 139. In interpreting this subrogation clause, the Eighth Circuit rejected the "make-whole rule" and instead adopted the "first priority rule" which holds that the insurer has first priority to any recovery arising out of the injury, up to the total amount of medical benefits paid by the insurer. Id. The first priority rule applies even if it leaves the subrogee less than fully compensated for her injuries. The Eighth Circuit thus held that the ERISA plan was entitled to recover its total subrogation claim from the settlement despite the fact that the remainder of the settlement would leave the plaintiffs less than fully compensated for their non-medical injuries.

Although the subrogation clause in Waller is similar to the subrogation clause at issue in this case, the circumstances of this case significantly differ from those in Waller. In Waller, the settlement was contingent upon a release from the Plan of its subrogation claim for all medical expenses paid. Because the plaintiffs fully compromised their medical expense claims for the settlement, the Plan was entitled to full recovery by way of subrogation. Furthermore, in Waller, there was no dispute whether plaintiffs injuries resulted from the car accident. However, in this case, it is questionable whether the Vynnette Hamanne's polychondritis was caused or aggravated by Humenansky's malpractice. The Hamannes litigated their case and asserted claims for only a portion of those medical expenses paid for by Central States on the belief that the polychondritis was not caused by Humenansky's malpractice. The Hamannes settled with Humenansky's liability insurer after the jury returned its $2.67 million verdict, thus compromising those claims for medical expenses that were submitted to the jury. Because the Hamannes did not claim medical expenses related to the polychondritis, Central States has no right of recovery for those expenses.

Central States makes issue of the fact that the Hamannes stipulated to the amount of their medical expenses and did not assert a claim for medical expenses stemming from Vynnette Hamanne's polychondritis. However, the Hamannes decided not to assert any claims for that condition because their expert, Dr. David Ridley, could not verify that it was caused or aggravated by Humenansky's malpractice. Dr. Ridley has treated Vynnette Hamanne's polychondritis since 1990 and states in his affidavit that he could not then and cannot now state to any degree of medical certainty that Humenansky's malpractice aggravated the polychondritis.

(Ridley Aff., Para. 8). He further asserts that it would be "conjecture and speculation" to say that Humenansky made the condition worse. *Id.*

The record establishes that while the trial was pending, Central States was aware that Dr. Ridley would not testify in support of those claims and that the Hamannes were having difficulty finding an expert to support the polychondritis claims. (Yetka Aff., Exh. O at 3–4). If Central States disagreed with the Hamannes' asserted medical expenses at trial, they could have assisted the Hamannes or intervened in that action. Central States now asserts that their medical consultant confirms that Vynnette Hamanne's polychondritis was incurred or aggravated as a result of Humenansky's malpractice. Although the parties devote much time arguing over whether the polychondritis was actually caused or aggravated by Humenansky's malpractice, that issue is beside the point because the Hamannes made a tactical decision at trial not to submit those medical expenses to the jury.

Whether or not such a decision was wise is not the issue before this Court. Rather, the issue is whether Central States is entitled to a subrogation claim that goes beyond what medical expenses the Hamannes recovered at trial. Under basic subrogation principles, Central States' subrogation claim is unreasonable because it is stepping outside the shoes of the beneficiary and asserting rights of recovery greater than what the Hamannes recovered at trial. Because Central States' interpretation of its subrogation interest is erroneous as a matter of law, the Court concludes that Central States abused its discretion by asserting a total subrogation claim of $94,053. *Donaho,* 74 F.3d at 900.

### B. Attorney fees and costs in the underlying action

█ Once this Court determines the amount of Central States' subrogation claim, the Hamannes argue that they are entitled to deduct from the subrogation claim an amount that reflects Central States' proportionate share of attorney fees and costs incurred by the Hamannes in bringing the underlying action. The Eighth Circuit has adopted the practice of reducing an insurer's subrogation recovery by its proportionate share of rea-

sonable attorney fees. *See Waller v. Hormel Foods Corp.,* 120 F.3d at 141. However, as Central States' asserts, the Plan at issue in *Waller* did not contain any provisions specifically dealing with attorney fees.

In this case, section 11.14 of the Plan provides that "[t]he Fund shall not be responsible for any expenses or fees incurred in connection with a recovery unless it shall have agreed in writing to pay those expenses or fees." (Yetka Aff., Exh. I). The Hamannes argue that this provision is not enforceable because such a requirement is not included in the Summary Plan Description, allegedly in violation of ERISA, 29 U.S.C. § 1022(a)(1). Section 1022(a)(1) of ERISA provides that a Summary Plan Description must be furnished to all participants and beneficiaries so as to apprise them of their rights and obligations under the Plan. However, section 1022(b) of ERISA specifies what information must be included in the Summary Plan Description, none of which concerns matters regarding attorney fees and costs.

The Hamannes do not contest the fact that there was no agreement in writing by Central States to pay attorney fees and costs. Given the clear provision in the Plan which requires such an agreement in writing, the Court concludes that Central States' interpretation of the Plan in regards to this matter was reasonable and the Hamannes are therefore not entitled to recovery of attorney fees and costs in the underlying action.

### C. Attorney fees and costs in this action

█ The Hamannes further assert that they are entitled to recover attorney fees and costs incurred in bringing this action. Pursuant to ERISA, this court may award attorney fees and costs to either party in its discretion. 29 U.S.C. § 1132(g)(1). The Eighth Circuit has held that any plan participant who prevails in a suit under ERISA should ordinarily recover attorney fees "unless special circumstances would render such an award unjust." *Stanton v. Larry Fowler Trucking, Inc.,* 52 F.3d 723, 729 (8th Cir. 1995). Furthermore, the burden of proving "special circumstances" rendering an award unjust is on the losing party. *Id.*

In deciding whether an award of attorney fees and costs is unjust, the Eighth Circuit has held that five factors should be considered: (1) the degree of the losing party's bad faith or culpability, (2) the ability of the losing party to satisfy an award of attorneys fees, (3) whether an award of attorneys fees against the losing party could deter other persons acting under similar circumstances, (4) the party requesting attorneys fees sought to benefit all plan participants, or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. *Jacobs v. Pickands Mather & Co.*, 933 F.2d 652, 659 (8th Cir.1991).

Central States failed to address this issue in their briefs and thus failed to meet its burden of showing that special circumstances exist in this case. Furthermore, consideration of the above five factors weighs heavily in favor of the Hamannes; of primary significance is the unreasonableness of Central States' subrogation claim which runs contrary to basic subrogation principles. On the basis of such a meritless claim, the Hamannes were forced to commence this action to enforce their rights under the Plan. Finally, an award of attorney fees in this instance would deter Central States and other similar entities from idly standing by as subrogees vigorously pursue recovery for their subrogation claims in court on behalf of the insurer and then asserting full recovery for those subrogation claims even if full compensation for those claims is not awarded at trial. The Court thus concludes that an award of attorney fees and costs is appropriate in this case.

## ORDER

Accordingly, based upon the foregoing and all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART as follows:

    a. Plaintiffs' motion for declaratory judgment is GRANTED. Defendant's subrogation claim in the underlying malpractice action is limited to the $37,258.94 in medical expenses paid by Defendant that were claimed at trial in the underlying malpractice action.

    b. Plaintiffs' motion to reduce Defendant's subrogation claim in the underlying

action to reflect its proportionate share of attorney fees and costs incurred by Plaintiffs in the underlying action is DENIED.

    c. Plaintiffs' motion for an award of attorney fees and costs incurred in bringing this declaratory judgment action is GRANTED.

2. Defendant's cross-motion for summary judgment is DENIED in its entirety.