**SOUTHERN MARYLAND HOSPITAL CENTER, Iradj Dadgar, Plaintiffs,**

v.

**Clarence CORLEY, Defendant/Third–Party Plaintiff,**

v.

**HERB GORDON AUTO WORLD, INC., and MD–Individual Practice Association, Inc., Third–Party Defendants.**

**Civ.A. Nos. AW–97–1923, AW–97–1924.**

United States District Court, D. Maryland.

May 18, 1998.

Benjamin J. Woolery, of Upper Marlboro, MD, for defendant/third-party plaintiff.

Kathleen M. Wobber, of Townson, MD, for third-party defendant Herb Gordon Auto World, Inc.

David E. Manoogian, David J. Finucane, and Epstein Becker & Green, P.C., of Washington, D.C., for third-party defendant MD–Individual Practice Association, Inc.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Currently pending before the Court are motions for summary judgment filed by each of the third-party defendants, third-party defendant MD–Individual Practice Association, Inc.'s motion for leave to file a reply, and MD–Individual Practice Association Inc.'s motion to determine the sufficiency of a response to a request for admissions. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons set forth below, the Court will deny the motion to file a reply, will grant both motions for summary judgment, and will deny the remaining motion as moot.

### Background

Clarence Corley ("Corley"), an employee of Herb Gordon Auto World, Inc. ("Herb Gordon"), ceased working for that company sometime during the first two weeks of April, 1995. Corley had participated in Herb Gordon's health plan, for which MD–Individual Practice Association, Inc. ("MD–IPA") was the insurer. Corley later obtained health insurance through a new employer, scheduled to commence on July 1, 1995. It is undisputed that under federal law and the terms of his employment, Corley could have elected to continue his participation in Herb Gordon's health plan for a period of time after his employment ended, and it is also undisputed that he was entitled to be notified of this option.

Herb Gordon followed certain procedures for informing former employees of their right to continue coverage. Its policy was to notify an employee of the right and then wait forty-five days for a response. Herb Gordon claims that it mailed notification to Corley on April 14, 1995, that it did not receive a response, and that on July 7, 1995 it notified MD–IPA that Corley's coverage should be terminated retroactive to the last day of April, 1995. Rhodes First Aff. ¶¶ 27–31.[1]

---

1. Herb Gordon has submitted at least three undated affidavits from Judy Rhodes. The affidavit attached as exhibit A to Herb Gordon's motion for summary judgment will be referred to as

Corley states that he never received the notification, and there is a factual dispute as to discussions between Corley and a representative of Herb ·Gordon which took place shortly after Corley ended his employment.[2]

In late June, 1995 Corley was admitted to the emergency room of Southern Maryland Hospital, where he stayed. for approximately two weeks and underwent a surgical procedure. MD–IPA was informed of Corley's hospitalization and authorized coverage. MD–IPA had not yet been told by Herb Gordon to terminate Corley's insurance retroactive to the end of April, and there is no evidence that MD–IPA had any prior notification that Corley's employment had ended.

The health care providers who treated Corley eventually submitted bills to MD–IPA for payment for services rendered. By that time MD–IPA had terminated Corley's insurance retroactive to April, and refused to make payment. The providers, Southern Maryland Hospital Center and Iradj Dadgar, M.D., sued Corley for payment in state court. Corley brought third-party claims against MD–IPA and Herb Gordon, and MD–IPA removed the action to this Court. On February 17, 1998, this Court granted the providers' motions for summary judgment. Judgment was entered in favor of Southern Maryland Hospital Center and against Corley in the amount of $15,258.62, and in favor of Iradj Dadgar and against Corley in the amount of $7,050.00. Corley continued to pursue his third-party claims against Herb Gordon and MD–IPA, who now each bring a motion for summary judgment.

*Analysis*

### I. *Motion to File Reply*

Corley's opposition to MD–IPA's motion for summary judgment was timely filed on February 9, 1998. On March 3, 1998, MD–IPA filed a motion for leave to file a reply. A request for an enlargement of time that is made after the expiration of the deadline will be granted if the failure to act was the result of excusable neglect. . Fed.R.Civ.P. 6(b)(2). MD–IPA's explanation for counsel's failure to file a timely reply does not constitute excusable neglect, and the Court will deny MD–IPA's motion for leave to file a reply. However, to the extent that Corley's opposition to MD–IPA's motion for leave to file a reply raised issues Corley previously raised in his opposition to the motion for summary judgment, MD–IPA has been given the opportunity to respond to these arguments in its reply to Corley's opposition to the motion for leave to file a reply. The Court has duly noted arguments raised in MD–IPA's reply to Corley's opposition to the motion for leave to file a reply.

### II. *Motions for Summary Judgment*

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed and all justifiable inferences drawn in his favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of infer-

"Rhodes First Aff." The affidavit attached as exhibit J to Herb Gordon's motion for summary judgment will be referred to as "Rhodes Sec. Aff." The affidavit attached as exhibit B to Herb Gordon's reply in support of its motion for summary Judgment will be referred to as "Rhodes Third Aff."

**2.** Corley claims that Judy Rhodes, the personnel administrator at Herb Gordon, told him that he had ninety days of coverage, but that she did not say whether or not the coverage was free. Corley Dep. 11–12. Rhodes denied making this statement. Rhodes Third Aff. ¶ 5. Corley testified that he thought he did not have to pay for the coverage, even though he had to pay for health insurance while employed by Herb Gordon. Corley Dep. at 11–12.

There is contradictory evidence in the record suggesting that Corley may have known that he had to pay for the continued benefits. Rhodes stated in her affidavit that after she mailed the notification, Corley called her asking why the premium was higher than it was when he was an employee. Rhodes First Aff. ¶ 29. The Herb Gordon employee handbook also states that employees must pay for health insurance that is continued beyond the termination of employment. *See* Herb Gordon Mot. for Summ. J. Ex. B. Exactly what Corley knew is a factual dispute which the Court will not resolve in ruling upon motions for summary judgment.

ences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)). "Summary judgment procedure is property regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

In determining whether genuine and material factual disputes exist, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. *Legal Framework*

There is no dispute that Corley received the health insurance at issue in this case as a benefit of his employment by Herb Gordon. As a result, this controversy is government by the Employee Retirement Income Security Act ("ERISA"), including the applicable COBRA amendments.

29 U.S.C. § 1161(a) provides that health care plans must allow an employee to elect to continue health care coverage upon the occurrence of certain "qualifying events." One such qualifying event is the termination of employment. 29 U.S.C. § 1163(2). The period within which the employee may elect an extension of coverage may not terminate until at least sixty days after the later of: (1) the date of the qualifying event, or (2) the date the employee received notice of his right to extend his coverage. 29 U.S.C. § 1165(1)(c). Even if the employee receives medical treatment before he elects to extend coverage, the insurer must pay for the benefits received as long as the employee elects coverage within the election period. *See Branch v. G. Bernd Co.,* 955 F.2d 1574, 1581 (11th Cir.1992). In the case of a termination

of employment, if the employee makes the election, coverage is continued for a period of eighteen months from the date of the qualifying event. 29 U.S.C. § 1162(2)(A)(i).

Plans are allowed to charge a premium for the continued coverage, except that the premium may not exceed 102% of the plan's normal premium. 29 U.S.C. § 1162(3)(A). If an employee elects to extend coverage, the coverage ceases if the employee fails to make timely payment of any premium required by the plan. 29 U.S.C. § 1162(2)(C).

### B. *MD–IPA's Motion for Summary Judgment*

According to MD–IPA, Corley's only genuine argument is that he did not receive notice of his rights to elect an extension of coverage. MD–IPA contends that it is entitled to summary judgment because it had no duty to inform Corley of his right to elect coverage.

There is no question that MD–IPA did not have a duty to inform Corley of his right to elect continued coverage. The plan "administrator" is responsible for notifying a beneficiary of his rights to continue coverage. 29 U.S.C. § 1166(a)(4). Under ERISA, the administrator is the person designated by the terms of the plan or, if no party is designated, the "plan sponsor" is the administrator. 29 U.S.C. §§ 1002(16)(A)(i), (ii). In the case of an employee benefit plan sponsored by a single employer, the employer is the plan sponsor. 29 U.S.C. § 1002(16)(B)(i). Because the plan does not identify an administrator, Herb Gordon, as the employer, is the administrator and has the responsibility of giving employees notice of their right to continue coverage after the termination of their employment. The plan agreement itself is clear in allocating the notice responsibility to Herb Gordon. *See* MD–IPA's Mot. for Summ. J. Ex. F (Art. VIII, ¶ 8).

Corley argues that MD–IPA may be held liable for a failure to notify because MD–IPA has some discretionary authority in managing the plan and therefore is a fiduciary who also is responsible for the notification process. However, a party is a fiduciary "only as to the activities which bring the person

within the definition." *Coleman v. Nation-wide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992) (interpreting 29 U.S.C. § 1002(21)(A)), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993). "[A] court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Id.* Corley is unable to overcome the clear statutory instruction that Herb Gordon is responsible for notification.

 Nor is the Court persuaded that Corley may recover under a theory of equitable estoppel. ERISA plans must be established and maintained pursuant to a written plan, and courts may not use equitable doctrines to modify an element of a written benefit plan. *Coleman,* 969 F.2d at 58–59. Corley's strongest argument is that the plan does not contemplate retroactive termination, and that MD–IPA should be equitably estopped from denying coverage because it informed the health care providers that it would pay for services.

The terms of the plan indicate that Corley was not entitled to coverage in the absence of an election to continue coverage. The Group Agreement between MD–IPA and Herb Gordon explicitly states that coverage is provided pursuant to the applicable terms of a document entitled "Evidence of Coverage." The Evidence of Coverage Manual ("Manual") is a fifty-three page document attached as Exhibit J to MD–IPA's motion for summary judgment. According to the Manual's introduction, it is provided to participants to explain MD–IPA's plan and its coverage. The Manual explains that plan subscribers lose membership eligibility if they stop working on a full-time basis. *See* Manual at 7–8.[3] A beneficiary's right to elect to pay for continued coverage is discussed more than once in the Manual. *See* Manual at 9, 34–39. A statement such as a pre-authorization cannot modify the plan's requirement that only full-time employees are participants and that discharged employees must pay for continued coverage. *See Coleman,* 969 F.2d at 58–59.

Corley is not eligible for equitable relief because he was no longer a full-time employee and because the plan documents indicate that discharged employees must pay for continued coverage. Moreover, Corley does not claim that he ever was told that continued coverage would be free of charge. Instead, he was told he had coverage, and he took this as meaning that he would not have to pay any premiums. *See supra* footnote 2. Even if the Court could fashion an equitable remedy based on the pre-authorization and the retroactive termination, Corley has not demonstrated that he would be entitled to such relief.

### C. *Herb Gordon's Motion for Summary Judgment*

 Herb Gordon admits that it was the plan administrator and that it was responsible for notifying Corley of his right to elect continued health insurance coverage. Judy Rhodes is the personnel administrator at Herb Gordon and has been in charge of notification for the past seventeen years. Rhodes testified that she followed her normal procedures in notifying Corley. Specifically, Rhodes testified that when an employee stops working for Herb Gordon, she first fills out a "COBRA Check–Off" sheet for the employee and enters the employee's name in a log spreadsheet. Rhodes First Aff. ¶ 9. The completed check-off sheet for Corley is attached to Herb Gordon's motion for summary judgment as exhibit D. After filling out the check-off sheet, Rhodes fills out a form letter to the employee and places it with other documents in an envelope addressed to the employee. Rhodes First Aff. ¶ 10. Next, Rhodes places the envelope in a mail slot so that another employee, Nancy O'Brien, can take it to the main office. Rhodes First Aff. ¶¶ 11–12; O'Brien Aff. ¶ 4. Rhodes sometimes instructs O'Brien to photocopy the envelope after it is run through the postage meter. O'Brien Aff. ¶ 5. After photocopying the envelope, O'Brien then places the mail in a plastic bin provided by a mailman. O'Brien Aff. ¶ 7.

The procedure evidently was followed in Corley's case, as Herb Gordon has attached a photocopy of an envelope addressed to Cor-

---

**3.** It seems to have been the plan's policy to continue coverage until the end of the month in which an employee is discharged. *See* MD–IPA Mot. for Summ. J. at 3.

ley's home in Rhodes's handwriting, Rhodes Third Aff. ¶ 8, and postmarked April 14, 1995. *See* Herb Gordon's Motion for Summ. J. Ex. I. After not receiving a response from Corley indicating that he wanted to continue coverage, Rhodes notified MD–IPA to terminate Corley's coverage retroactive to April 30, 1995.

Herb Gordon has satisfied its burden of showing statutory compliance and that notice was sent. *See Stanton v. Larry Fowler Trucking, Inc.,* 52 F.3d 723, 727–29 (8th Cir. 1995) (placing burden on employer to show compliance with statute once employee states that he did not receive notice). In *Stanton,* the Eighth Circuit held that the issue must be resolved against the employer when the evidence of notice is in "equipoise." *Id.* at 729. In that case, there was a dispute as to whether the employer verbally notified the employee of his rights; the case did not involve proof of mailing or an employee's claim that he never received a mailing.

The evidence in this case is not in equipoise, and the Court agrees with the reasoning of the District Court in *Roberts v. Nat'l Health Corp.,* 963 F.Supp. 512 (D.S.C.1997), *aff'd,* 133 F.3d 916 (1998). That court found that an employer satisfied its statutory burden by showing that it utilized a reliable system of notification, had business records indicating that a letter was sent to the plaintiff, and had a report date-stamped on the day the letter was mailed. *See Roberts,* 963 F.Supp. at 514–15. The court noted that compliance with the notification requirement is sufficient, and that an employee's protestation that he or she did not receive the letter is not enough to raise a genuine and material issue. *See id.*

Herb Gordon has produced uncontroverted evidence that Rhodes has a systematic and orderly system for notifying employees of their rights. The Court is not persuaded by Corley's argument that the procedure must be computerized to be reliable. Rhodes has produced records indicating that a letter was mailed to Corley, and has produced a photocopy of the envelope addressed to Corley at the proper addresses with a postmark dated April 14, 1995. Herb Gordon has demonstrated both a good faith effort and evidence that the letter actually was mailed. To require any more would be to ask the employer to guarantee receipt of notification, a requirement rejected by the Eighth Circuit in an opinion cited by Corley. *See Stanton,* 52 F.3d at 728–29. For the reasons discussed in Part II.B, the Court also finds that Corley is not entitled to equitable relief against Herb Gordon.

*Conclusion*

MD–IPA is entitled to summary judgment because under both federal law and the terms of the plan it is not responsible for notification, and because even assuming his statement of the facts are true, Corley is not entitled to equitable relief. Herb Gordon is entitled to summary judgment because the uncontradicted evidence shows that it made a good faith effort to comply with the notification requirements and that the letter actually was mailed. Both motions for summary judgment will be granted. If MD–IPA insists on pursuing attorneys' fees, the Court only will consider the request after a motion is filed under Local Rule 109(2)(a) and is briefed properly. The motion for leave to file a reply will be denied because MD–IPA has not shown excusable neglect, and the motion to determine the sufficiency of Corley's response to the request for admissions will be denied as moot.